ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1911.

(Continued from Volume 155.)

AUGUST STUTZKE, Respondent, v. CONSUMERS
ICE AND FUEL COMPANY, Appellant.

**St. Louis Court of Appeals, March 21, 1911.**

1. **DAMAGES: Instructions: .Limiting Recovery on Different Items to Amount Pleaded.** In order for an instruction on the measure of damages to err with respect to not limiting the amounts allowed on the several items of damages to the amount demanded therefor in the petition, it must appear that its broad language complained of applies to the very thing as to which plaintiff has limited his claim; that is, it must make general that which plaintiff has made limited.

2. **PLEADING: Instructions: Past Tense: Period Referred to.** When a petition uses the past tense, it speaks of the period up to the time of its filing, but when an instruction uses the past tense, the period up to the time of its being given is included.

3. **DAMAGES: Instructions: Limiting Recovery on Different Items to Amount Pleaded.** Where, in an action for personal injuries, the petition alleged that plaintiff had "suffered loss of wages in the sum of $15 per week since the date of his injury," but other averments were sufficient to cover the loss of wages after the time of filing the petition and up to the time of trial, the instruction on the measure of damages was not erroneous in failing to limit the amount of recovery for loss of time to $15 per week, since the limitation in the petition applied only to the date of filing the petition, while the instruction covered that period and also loss sustained after that time and up to the time of trial.

Stutzke v. Ice and Fuel Co.

4. MASTER AND SERVANT: Injury to Servant: Furnishing Safe Animal: Assumption of Risk. It is the duty of the master to furnish his servant, engaged in hauling, with reasonably gentle and safe animals, suitable for the performance of the service required, the failure to perform which duty is negligence; and the liability of the master for injuries to a servant resulting from such negligence would not be affected by the assumed risk rule, where the master knowingly and without warning furnished the servant with a dangerous animal and the latter was ignorant of its character.

5. ——: ——: ——: ——: Obvious Danger: Jury Question. In an action by a servant for injuries received by being kicked by a dangerous mule furnished him by the master, held, that the question whether the danger was so obvious as to preclude plaintiff's recovery was for the jury.

6. ——: ——: ——: Contributory Negligence: Jury Question. In an action by a servant for injuries received by being kicked by a dangerous mule furnished him by the master, held, that the question whether plaintiff exercised ordinary care was for the jury.

7. ——: ——: ——: ——: Assumption that Animal was not Dangerous. Where a servant is furnished by his master with a mule to do certain work and is not warned or otherwise made cognizant of the mule's vicious propensities, he has a right to assume that the master has furnished him with a reasonably safe animal and to govern his actions accordingly.

8. ——: ——: ——: Sufficiency of Evidence. In an action by a servant against a master for injuries received by being kicked by a dangerous mule belonging to the master, evidence held sufficient to support a verdict for the plaintiff.

9. ——: ——: ——: Instructions. In an action by a servant for injuries received from a dangerous mule belonging to the master, instructions that the servant must prove the mule was a dangerous and vicious animal, which the master knew, but plaintiff did not, and that when he was injured he was exercising ordinary care, and instructions denying the servant's right to recover if the kick was one of the risks incident to his work, and denying a recovery if the mule's viciousness was known to the servant or might have been known to him by reasonable care, were sufficiently fair to the master.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

*Thomas D. Cannon* for appellant.

(1)   The court should have sustained the defendant's demurrer to the evidence at the close of all the evidence.   (a) The plaintiff's second amended petition does not state a cause of action.   The right of recovery is predicated upon the theory that the proximate cause of the plaintiff's injury was the defendant's failure to warn plaintiff of the danger of the mule's propensity to kick.   The plaintiff pleads that he was a teamster and driver by vocation; he needed no warning; he was presumed to know and appreciate what is a matter of common knowledge, that there is always danger to be guarded against near the heels of a mule.   Borden v. Falk Co., 97 Mo. App. 566; Tolin v. Terrill, 133 Ky. 210; Stegman v. Gerber, 123 S. W. 1041; Hirsch v. Bread Co., 129 S. W. 1061.   (b) The failure of the defendant to warn plaintiff of the danger of the employment which was obvious, and as well (or better) known to the plaintiff as to the defendant, does not constitute actionable negligence under the circumstances of this case.   It was not the proximate cause of plaintiff's injury.   Cases cited under this point sub-div. a Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Bair v. Heibel, 103 Mo. App. 621; Mueller v. Shoe Co., 109 Mo. App. 517; Berry v. Kansas City, 128 Mo. App. 374; Meyers v. O'Bear, 129 Mo. App. 556; Miller v. Walsh, 129 S. W. 459; Heffner v. Sprague, 177 Fed. 897; Mengel v. Dulen, 174 Fed. 647; Clark v. Railroad 179 Mo. 66; Smith v. Forester Nace Box Co., 193 Mo. 715; Hager v. Terminal R. R., 207 Mo. 302.   (c)   Because the plaintiff's testimony shows that his own negligence was the proximate or procuring cause of his injuries. He had no right to permit his mind to wander and became engrossed "somewhere else," so as to become heedless of the danger, and fail to take proper precaution for his own safety.   Tolin v. Terrel, 133 Ky. 210; McDermott v. Railroad, 87 Mo. 285; Doer v. Brewing Co., 176 Mo. 547; Wheat v. City of St.Louis, 179

Mo. 572; Clancy v. Railroad, 192 Mo. 615; Sissell v. Railroad, 214 Mo. 515; Degonia v. Railroad, 224 Mo. 564; Vandyke v. Railroad, 130 S. W. 1; Beymer v. Packing Co., 106 Mo. App. 726; Diamond v. Kansas City, 120 Mo. App. 185; Pohlman v. Car & Fdy. Co., 123 Mo. App. 228; Meyer v. O'Bear, 129 Mo. App. 556; Williamson v. Railroad, 139 Mo. App. 481. (d) Because he selected the unsafe way to do the work, when he knew the danger, and must bear the consequences. Plaintiff's own testimony shows that his negligence was the direct cause of the injury, and he cannot hold his master liable. Smith v. Box Co., 193 Mo. 715; Pohlman v. Car & Fdy. Co., 123 Mo. App. 228; Dressie v. Railroad, 129 S. W. 1012. (e) Because the plaintiff assumed the risk of the danger to which he was exposed in working with and about the mule team; the alleged injury to plaintiff was due to a danger inherent and incident to the business in which he was engaged; and he is not entitled to recover in this case. Sutherland v. Lumber Co., 130 S. W. 40; Harris v. Railroad, 124 S. W. 576; Courtier v. Mercantile Co., 136 Mo. App. 517; Meyer v. O'Bear, 129 Mo. App. 556; Fugler v. Bothe, 117 Mo. 475; Junior v. Electric L. & P. Co., 127 Mo. 79; Epperson v. Postal Tel. Co., 155 Mo. 346; Roberts v. Mo. & Kans. Tel. Co., 166 Mo. 378; Hager v. Railroad, 207 Mo. 302; Bradley v. Tea & Coffee Co., 213 Mo. 326; Labatt on Master and Servant, sec. 206; Railroad v. Bresmer, 97 Pa. State, 103; Frazier v. Hood, 15 Scottish Session, Cases 4th series 178; Coal & Mining Co., v. Balla, 104 S. W. 860; Coal & M. Co., v. Reeble 137 Ill., App. 5; Hoover v. Coal Co., 149 Ill. App. 259; Coal & Coke Co. v. Phaup, 121 S. W. 651. (2) The court erred in giving and reading to the jury instruction No. 3, asked by the plaintiff. This instruction allows recovery for past loss of earnings without limitation, while the plaintiff's petition charges that he was regularly earning $15 per week, prior to his injury; that as a result of the injury

complained of he suffered loss of wages in the sum of $15 per week, since the date of his injury. Smoot v. Kansas City, 194 Mo. 513; Radke·v. Basket Co., 129 S. W. 508.

*Stein & Wulff* and *Brownrigg & Mason* for respondent.

(1) It is the duty of a master to furnish his servant with reasonably safe appliances to work with, and this rule applies to animate as well as to inanimate instrumentalities. McCready v. Stepp, 104 Mo. App. 340; Hammond & Co. v. Johnson, 38 Neb. 244; Leigh v. Railroad, 36 Neb. 131; McGarry v. Railroad, 18 N. Y. Suppl. 195; Helmke v. Stettler, 69 Hun. 107; Farmer v. Tel. Co., 38 So. 775; Roberti v. Anderson, 76 Pac. 30; Ice Co. v. Finn., 80 Fed. 483; 26 Cyc., p. 1113. (2) The servant only assumes such risks as are ordinarily incident to the business in which he is engaged. He never assumes the risk of a dangerous instrumentality or appliance which his master negligently furnishes him. Wendler v. Peoples Housefurnishing Co., 165 Mo. 527; Cole v. St. Louis Transit Co., 183 Mo. 94; Charlton v. Railroad, 200 Mo. 433. (2) Instruction No. 3 is not erroneous in failing to limit the plaintiff's recovery for loss of wages and earning power to $15 a week. The evidence in this case showed the permanent injury and future loss of wages. This distinguishes it from the Smoot case and other cases cited by appellant. Lindsay v. Kansas City, 195 Mo.; 180; Shinn v. United Rys. Co., 125 S. W. 782; Heinz v. United Rys. Co., 122 S. W. 346.

STATEMENT.—Plaintiff brought this action to recover damages of defendant for personal injury suffered by him while in its service from being kicked under the groin by a mule. The jury returned a verdict in his favor for five thousand dollars. Defendant

has appealed.    The petition charges as negligence in substance that, without giving plaintiff any warning of its dangerous and vicious character, defendant knowingly furnished to plaintiff for his use as driver a mule which was dangerous and vicious, in that it was given to kicking human beings, of which fact plaintiff was ignorant.    In stating his damages, the plaintiff alleges among other things, "that as a result of said injury, he has suffered loss of wages in the sum of, to-wit, fifteen dollars per week since the date of said injury.    Plaintiff further says that, on account of the permanent character of said injury, his earning capacity is seriously and permanently diminished. Wherefore, plaintiff states that, by reason of the premises and as a direct result of the said negligence of the said defendant, he has been damaged in the sum of fifteen thousand dollars, for which sum he prays judgment, together with his costs in this behalf expended."

The answer contained a general denial and "For a further defense the defendant states that all of the habits of the mule referred to in plaintiff's second amended petition on the occasion in question were open and obvious and were known to the plaintiff; and whatever dangers, if any, existed in working with and about said mule were open and obvious and were known to plaintiff, or by the exercise of ordinary care would have been known to plaintiff, and that plaintiff assumed whatever risk, if any there was, in working with and about said mule, on said occasion."    The reply was a general denial.

The evidence discloses that in May, 1906, the defendant's manager employed plaintiff as helper on an ice wagon.    He worked as helper for six or seven weeks at twelve dollars a week, when the manager employed him as driver of a team of mules attached to an ice wagon, at fifteen dollars a week.    He was given no warning by the superintendent or any one else that either of the mules was given to kicking.    One of the

mules was a big dark animal called "Jack." Part of plaintiff's duties was to unharness the mules when the day's ice delivery was completed and to hang the harness on a peg. The peg provided by defendant to hang the harness on was located in the rear of the stall. On August 23, 1906, after plaintiff had been driving the team about three weeks, the mule kicked him in the groin, as he was hanging up its collar on the peg. The injury thus received brought on gangrene with resultant amputation of the leg. There was ample evidence that the mule was dangerous and vicious, in that it was given to kicking human beings, and that plaintiff's manager had had direct, positive and repeated notice of its dangerous and vicious propensity, long before he had employed the plaintiff. There is no evidence that, at any time before he was kicked, plaintiff was given any warning, by any one, of the mule's vicious proclivity. The plaintiff testified that he had received none, and the defendant's manager testified that he had given him none. In fact, the defendant strove to establish, and its evidence had a tendency to prove, that the mule was gentle and not given to kicking, unless beaten, and that plaintiff was drunk when the mule kicked him. The plaintiff did testify that prior to the time the mule kicked him "most of the time he acted queerly. He would make a mean motion all the time," but he explained this later by saying that he attributed it to the mule feeling good in consequence of having been resting in the stable for a day or two. He testified that the mule had never indicated to him any inclination or disposition to kick prior to the time of the kick which caused the injury on account of which this suit was brought. His cross-examination may be said to have elicited that if he had not stood in the particular place he did when hanging up the harness, but had stepped to one side a little, the mule might not have been able to have reached him, but that that would have been awkward and unusual; also that he might have

unharnessed the mule out in the yard and carried the harness in, but that that would have been unusual. Upon cross-examination he was asked questions and gave answers to the effect that all mules are apt to kick and one has to be guarded about them, but he also stated that equal care was needed about horses and that some mules are dangerous and some are not. It is difficult to tell from the record just how much of the plaintiff's statements tending to show that all mules are dangerous is attributable to timidity, ignorance and confusion, and how much was due to mere tiredness, superinduced by constant repetition of the same question, finally very properly stopped by the court. There were other witnesses who gave testimony tending to prove that mules as a class were not usually dangerous. The plaintiff's evidence tended to prove that he had lost his leg as a result of the injury and had suffered a substantially total loss of wages from the time he was hurt, August 23, 1906, to October 28, 1909, the day of the trial.

CAULFIELD, J. (after stating the facts).—I. Defendant complains of the instruction given by the trial court on the measure of damages. It contends that said instruction is erroneous because it allows recovery for past loss of earnings beyond the amount specified in the petition. This criticism is based upon the fact that in his petition the plaintiff in stating his damages alleged that as a result of his injury he had suffered loss of wages in the sum of fifteen dollars per week since the date of his injury, while the instruction permitted the jury to compensate him for *any loss* of wages which they might believe from the evidence he had suffered as a result of his injury. The defendant cites in support of its contention, Smoot v. Kansas City, 194 Mo. 513, 92 S. W. 363; Radtke v. Basket Co., 229 Mo. 1, 129 S. W. 508, which in effect hold it to be error to so instruct the jury as to permit them to award recovery on account of a certain element of damage greater than

is claimed or shown by the plaintiff in his petition or evidence to have been the amount of his loss in that particular; that is to say, if the plaintiff sees fit to itemize his damages, the jury should be required to confine the award of recovery within the amount specified for the particular element of damage relied upon. In order for an instruction to err in this respect, however, it must appear that its broad language complained of applies to the very thing as to which plaintiff has limited his claim; the instruction must make general that which the plaintiff has made limited. Thus, it has been held by our supreme court that though a petition purports to state the amount which plaintiff has suffered through loss of time, speaking in the past tense, such statement or limitation is to be taken only as applying to the date of the filing of the petition, and if there are other allegations in the petition and proof made thereunder requiring an allowance of damages for loss of time *after* the time of filing the petition, it is not error for the instruction to permit an award of damages for loss of time over and beyond the amount specified. [Lindsay v. Kansas City, 195 Mo. 166, 93 S. W. 273.] This is manifestly proper. When the petition speaks in the past tense it necessarily speaks of the period up to the time of its filing, while when the instruction speaks in the past tense it speaks of the larger period up to the time of its being given. The instruction is speaking of a different period than did the petition. It is not allowing recovery for the same loss of time referred to by the petition but for a larger loss. It would be manifestly unfair to limit plaintiff's recovery for a larger loss to an amount specified by him for a smaller loss, if his petition alleges and his proof shows such larger loss. That our supreme court recognizes this and does not disapprove of its ruling made in the Lindsay case is made manifest in the Radtke case by the distinction there drawn between the facts of that case and the facts of the Lindsay case, and by the

quotation with approval, in the Radtke case, of language used by this court in making a like distinction in the case of Heinz v. Rys. Co., 122 S. W. 346, 347, 143 Mo. App. 38, which in part is as follows: "The decisions of Tandy v. Transit Co., 178 Mo. 240, 77 S. W. 994, and Lindsay v. K. C. 195 Mo. 166, 93 S. W. 273, relied on by plaintiff, are not in point. In those cases there was testimony tending to prove that injured party would sustain loss of time in the future—that is, after the filing of the petition and even after trial—and for this reason it was held instructions on the measure of damages which did not limit recovery to the loss of time alleged in the petition, were not erroneous since that allegation covered only time lost up to the day the petition was filed. But in the present case, whatever time plaintiff lost and whatever expense he was put to for treatment by a physician had all been lost and incurred prior to the filing of the suit. He testified he had lost two weeks' time from work as alleged in the petition and had incurred a doctor's bill of fifty dollars. There was no chance then for other damages to accrue on account of those items continuing to entail damage after the case had been begun." In the case at bar, like in the Lindsay case, the averments placing plaintiff's loss at fifteen dollars per week applied only up to the time when the petition was filed. There were, however, additional averments which we deem sufficient to cover loss of wages after the time of filing the petition up to the time of trial. There was also testimony tending to prove loss of wages after the time of filing the petition and up to the time of the trial, a period of about nine months. This case is then to be distinguished from the cases relied upon by defendant, and similar cases, and is to be governed by the Lindsay Case. The instruction was not erroneous and the action of the trial court in giving it is approved.

II. The defendant contends that the court should have sustained its demurrer to the evidence and that the petition does not state a cause of action.

It was the duty of the defendant to exercise ordinary care to furnish its servant with a reasonably gentle and safe animal suitable for the performance of the service required. [McCready v. Stepp, 104 Mo. App. 340, 78 S. W. 671.] And it was negligence for the defendant knowingly to furnish to the plaintiff for use in the course of his employment a mule which was dangerous and vicious, at least if plaintiff was ignorant of that fact and the defendant failed to inform him. [McCready v. Stepp, 104, Mo. App. 340, 78 S. W. 671; Leigh v. Omaha Street Ry. Co., 36 Neb. 131; McGarry v. New York & H. R. Co. 18 N. Y. Supp. 195.] And the liability of the defendant in the respect mentioned is not affected by the doctrine that the servant, when he enters his master's employ, impliedly agrees with him to assume the risk of usual dangers incident to the work. Plaintiff did not assume the risk of being injured through the defendant's negligence in knowingly, and without warning, furnishing a dangerous mule, he being ignorant of its character. It may be, as defendant argues, that mules as a class are dangerous, or "apt" to kick, but the evidence here discloses that there are gentle mules, not addicted to kicking, and if so it was the duty of defendant to exercise ordinary care to furnish that kind for plaintiff's use. At least, defendant should have exercised ordinary care to furnish one not more dangerous than the usual run of mules. The mule furnished to the plaintiff is shown by the evidence to have been extraordinary dangerous; a thoroughly wicked mule. We are not impressed with the argument that plaintiff's own testimony disclosed that the mule was so obviously dangerous that a man of ordinary prudence would not use it or work around it. Plaintiff's testimony in that respect really amounted to nothing more than an opinion on the gen-

eral character of mules and even that was contradictory and confused and does not fairly represent the trend of plaintiff's testimony. That and the testimony of plaintiff's other witnesses tended to prove that there are gentle mules, in fact that mules as a class are not dangerous and that this particular mule was much more dangerous than his class. In this case the question of whether the danger was so obvious as to preclude plaintiff's recovery was for the jury. It is the same with the question whether the plaintiff exercised ordinary care in hanging up the harness at a place where the mule could reach him. The evidence tends to prove that the plaintiff performed that duty in the usual way, unharnessing the mule in the stall and placing the harness upon the peg provided by his master. We are not impressed that he was negligent in permitting his eye and thought to wander for a moment to his work of hanging up the collar. It is probable that if his master had not neglected to warn him that the mule he was working by was a lurking devil, he would have kept the vigilant watch which defendant now insists he should have kept. Not having been warned or otherwise made cognizant of the mule's propensity, he had a right to assume that his master had furnished him with a reasonably safe animal and upon that assumption his action was perfectly natural and proper. The petition aptly alleges the relation of master and servant between the defendant and plaintiff, a negligent breach of duty by the master in the manner we have indicated and plaintiff's injury as the direct result thereof. The proof fully sustains the allegations of the petition. The criticism aimed at the petition is unwarranted and the demurrer to the evidence was properly everruled.

III. By the instructions it was made incumbent upon the plaintiff to prove that the mule was a dangerous and vicious animal and that that fact was known to the defendant and was not known to the plaintiff

and had not been communicated to the plaintiff, and that at the time plaintiff was injured he was exercising ordinary care for his own safety. On behalf of defendant the court gave an instruction on the assumption of risk, denying plaintiff's right to recover if the kick received by the plaintiff was one of the risks naturally incident to his work. It also gave an instruction denying plaintiff's right to recover if the mule's vicious propensity was known to the plaintiff or might have been known to him by the exercise of reasonable care. These instructions were at least as fair to the defendant as it had any right to receive or expect.

The defendant has assigned errors other than those we have mentioned but we do not care to prolong this opinion by a recital or discussion of them. Suffice to say we have carefully considered them and find them without sufficient merit or prejudicial effect to justify reversing the judgment on acount of them. The case was well and fairly tried and we deem the judgment to be for the right party.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.