## Wytheville.

## TURNER V. RICHMOND AND RAPPAHANNOCK RIVER RAILWAY COMPANY.

### June 14, 1917,

### Absent, Burks, J.

1. APPEAL AND ERROR—*Second Trial.*—Where a trial has been had in an action at law and a verdict rendered in favor of the plaintiff, which the trial court set aside, and to which ruling the plaintiff excepted, and at the second trial the plaintiff declined to introduce any evidence and suffered a verdict to be found for the defendant, which verdict he moved to set aside and excepted to the action of the trial court overruling that motion and entering judgment for the defendant, the Supreme Court of Appeals must review the proceeding on the first trial, and if it finds that error was committed in setting aside the firts verdict, it must annull all. proceedings subsequent to that verdict, and render judgment thereon.

2. MASTER AND SERVANT—*Assumption of Risk—Question for Jury.*— Whether or not a servant knew or ought to have known of the dangerous condition of his place of work and hence assumed the risk thereof is a question for the jury, when the danger is not so open and obvious and not so apparent as to charge him with knowledge thereof as a matter of law.

3. NEW TRIAL—*Verdict Contrary to the Law and the Evidence— Conflicting Evidence.*—Where a question was resolved by the verdict of the jury in favor of the plaintiff on conflicting evidence, the verdict ought not to be disturbed, provided the case was fairly submitted to the jury on the instructions.

4. MASTER AND SERVANT—*Assumption of Risk—Instructions—Case at Bar—Appeal and Error—Harmless Error.*—In an action by a servant against his master for injuries inflicted upon him from being kicked by a mule, the property of the master, the court instructed the jury that the servant did not assume the risk of injury by a vicious mule, about which he had to work, but of the vicious and dangerous character of which he did not know and could not have found out by the exercise of

ordinary care, and of which he was not warned by defendant or its employees, who knew or ought to have known thereof. The incorporation of the words "or its employees" in this instruction, if error, was harmless error, so far as defendant was concerned. If the plaintiff had knowledge, no matter how that knowledge was obtained, of the vicious and dangerous nature of the mule, such knowledge would defeat his right to recover; because if he knew the vicious and dangerous propensities of the animal, he would be held to have assumed the risk. Therefore, an instruction, the tendency of which was to increase the plaintiff's sources of knowledge must enure to his prejudice and to the benefit of the defendant, and such was the effect of the superadded words "or its employees."

5. FELLOW SERVANTS—*Vice-Principal.*—Mere superiority in rank of a foreman put in charge of a gang of hands does not *per se* affect his relation of fellow servant to those working under him. But a different principle applies where the foreman is engaged in the discharge of a non-assignable duty for the master. In the latter case, he is not a fellow servant but a vice-principal.

6. MASTER AND SERVANT—*Liability of Master—Safe Appliances— Vicious Animals.*—It is the positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith to do his work, and where the master knows or should know that an animal furnished for the use of the servant is vicious, he is liable for injuries to his servant caused thereby, subject, of course, to the qualification that the vicious and dangerous propensities of the animal are unknown to the servant, and that he is not guilty of contributory negligence.

7. FELLOW SERVANTS—*Vice-Principal.*—In the instant case the safe appliance doctrine imposed upon the defendant the duty of using ordinary care to furnish the plaintiff, as stable boss, with a reasonably safe mule in connection with the discharge of the duties imposed upon him by that employment, and the defendant's foreman in discharging or failing to discharge such duties of defendant company was not the fellow servant of the plaintiff but a vice-principal for whose negligence, if any, the defendant is liable to plaintiff if it was the proximate cause of his injury, and plaintiff himself was free from negligence.

Error to a judgment of the Circuit Court of Henrico county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Smith & Gordon* and *James F. Minor,* for the plaintiff in error.

*Williams & Mullen* and *Thomas P. Bryan,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

Charles Turner, a minor seventeen years of age, who at the time of the grievance complained of was an employee of the defendant in error, brought this action by his next friend to recover damages for personal injuries inflicted upon him from being kicked by a mule, the property of the defendant.

There had been two trials of the case. The first resulted in a verdict for the plaintiff for $2,000, which the court set aside, and to that ruling the plaintiff excepted. At the second trial, the plaintiff declined to introduce any evidence and suffered a verdict to be found for the defendant, which verdict he moved to set aside and excepted to the action of the court overruling that motion and entering judgment for the defendant. In these circumstances, this court must review the proceeding on the first trial, and if it shall find that error was committed in setting aside the first verdict, it must annul all proceedings subsequent to that verdict, and render judgment thereon. Code, sec. 3484; Burks' Pl. & Pr., pp. 602, 603.

From the standpoint of a demurrer to the evidence by the defendant, the material facts are these: The defendant was engaged in constructing a railroad from the city of Richmond to Old Church, in Hanover county, and had employed in the work about fifty or sixty mules. These animals, at the time of the accident, were housed in a large stable located in Henrico county. The building was equipped with mangers on each side, but was not divided into separate stalls. C. L. Ruffin was the superintendent of the railroad company and E. W. Thomas the general foreman in charge of the department comprising the live stock and the employees who cared for and worked them. Plaintiff had been in the employment of the defendant for a few days as time keeper when a vacancy occurred in the position of stable boss, and Thomas, with the approval of Ruffin, transferred the plaintiff to that place. His duties as stable boss consisted in looking after and caring for the stock and seeing that they were properly fed and harnessed. He had not had much experience with mules, and had only served as stable boss for a week or ten days when the accident happened.

On November 4, 1915, Thomas ordered the plaintiff to drive up a certain bay mare mule from the stable lot to a manger in the stable and help to catch her. Turner, in obedience to that order, drove the mule into the stable and started to go towards her head to lay hold of the strap around her neck, when, as he expressed it, "that's all I can remember." The plaintiff was carrying out instructions by the direction and in the presence of Thomas, who followed him into the stable and was standing by with a stick in his hand. Thomas testified, "I said, 'Get up, the mule will kill you down there.' He said, 'I can't get up.' I helped him up, and called the blacksmith, and we took him out. * * *"

This particular mule was shown to be of an unusually vicious and dangerous disposition. Indeed, she might well be characterized (as was another mule in one of the cases cited) "a lurking devil." The witnesses testified that the mule was worked very seldom because Thomas could not get any driver to work her, "and he kept her in the back stall." "When they turned the others out, they turned her out too." "A man would go and lean over the feed box and snap the halter ring and let her go; and when she came back a man would lean over the box and snap it again." It was shown that Thomas knew that the animal was an unusually vicious and dangerous animal, and that nobody could handle her. He told the plaintiff's father that she was "a bad, kicking mule." "I said, 'Did you tell the boy that?' He said, 'No, I never did, * * * I overlooked that, I am sorry it happened, I ought to have told him.'"

Plaintiff was carried to the Retreat for the Sick, in Richmond, where two physicians attended him, and he was in the hospital for sixteen days. One of the attending physicians says: "His nose was broken, his cheek bone fractured, and the upper jaw had been crushed in * * * practically the whole side of his face was caved in * * * and a good many of his teeth were knocked out." Another physician, after speaking of his suffering, says: "* * * possibly after a year or two he developed hemorrhages from the nose so much so that I sent him to a specialist;" and he underwent an operation for that trouble.

We are of opinion that the controlling questions in the case are assumption of risk and contributory negligence, and that both were jury questions under the evidence in this case.

"Whether or not a servant knew or ought to have known of the dangerous condition of his place of work and hence assumed the risk thereof is a question for the jury, when

the danger is not so open and obvious and not so apparent * * * as to charge him with knowledge thereof as a matter of law." *Powhatan Lime Co.* v. *Whetzel's Admx.,* 118 Va. 161, 86 S. E. 898; *C. & O. Ry. Co.* v. *Meadows,* 119 Va. 33, 89 S. E. 244. As to the contributory negligence rule, see *Southern Ry. Co.* v. *Jones,* 118 Va. 685, 88 S. E. 178.

Both questions were resolved by the verdict of the jury in favor of the plaintiff at the first trial on conflicting evidence, and the verdict ought not to have been disturbed, provided the case was fairly submitted to the jury on the instructions.

The court gave eleven instructions, the correctness of only two of which (Nos. 2 and 3) are drawn in question here.

No. 2 is as follows: "The court, however, instructs the jury that the risk of injury by a vicious and dangerous mule, about which he has to work, but of the vicious and dangerous character of which he did not know and could not have found out by the exercise of ordinary care, and was not warned by defendant or its employees, who knew or ought, in the exercise of reasonable diligence, to have known thereof, and if the jury believe from the evidence such to have been the fact, was not one of the ordinary risks assumed by plaintiff by virtue of his employment, and if he was injured thereby, and was free from contributory negligence himself, they must find for the plaintiff, unless they further believe that said danger was so obvious and plain that plaintiff, considering his age and experience, must be presumed to have been aware of said danger."

The specific objection to this instruction is to the incorporation therein of the words, "or its employees." If the plaintiff had knowledge, no matter how that knowledge was obtained, of the vicious and dangerous nature of the mule, such knowledge would defeat his right to recover; because

if he knew the vicious and dangerous propensities of the animal, he would be held to have assumed the risk. Therefore, an instruction, the tendency of which was to increase the plaintiff's sources of knowledge must enure to his prejudice and to the benefit of the defendant, and such was the effect of the superadded words "or its employees." So that the error, to say the least of it, is harmless, so far as the defendant is concerned.

Instruction No. 3 reads: "The court instructs the jury that defendant could not delegate to an employee, so as to relieve itself of liability for failure to comply therewith, the duty to use ordinary care to provide Charles Turner with a reasonably safe place in which to work, and reasonably safe animals and appliances to work with, and to give him such warnings and instructions as to the unusually dangerous conditions of his employment as the jury believe from the evidence his youth and inexperience, or ·either, made necessary, if they believe from the evidence such unusually dangerous conditions existed; and that the defendant's foreman, E. W. Thomas, in discharging or failing to discharge such duties of defendant company, was not the fellow servant of the plaintiff but a vice-principal for whose negligence, if any, the defendant is liable to plaintiff if it was the proximate cause of his injury, and he himself was free from negligence."

The crux of the objection to that instruction is to the statement, "that the defendant's foreman, E. W. Thomas, in discharging or failing to discharge such duties of defendant company was not the fellow servant of the plaintiff but a vice-principal * * *"

The rule has repeatedly been announced by this court that mere superiority in rank of a foreman put in charge of a gang of hands does not *per se* affect his relation of fellow servant to those working under him. But a different principle applies where the foreman is engaged in the discharge

of a non-assignable duty for the master. In the latter case, he is not a fellow servant but a vice-principal. *Reid* v. *Medley,* 118 Va. 462, 87 S. E. 616; *Haley* v. *Trice,* 118 Va. 599, 88 S. E. 314, and cases cited, in which the distinction is illustrated. Subject to that test instruction No. 3 must stand or fall. In other words, if the safe appliance doctrine in the instant case imposed upon the defendant the duty of using ordinary care to furnish the plaintiff, as stable boss, with a reasonably safe mule in connection with the discharge of the duties imposed upon him by that employment, then, in essentials, the instruction is free from objection. But if the safe appliance doctrine does not apply, then Thomas and Turner were fellow servants, and the trial court did not err in setting aside the first verdict on the ground that the jury was misdirected on a material point as to the law of the case.

In the article in 26 Cyc. on Master and Servant, the authors (in discussing the safe appliance and safe place rule), after stating the general rule, at p. 1097, that "It is the positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith * * * to do his work * * *," at p. 1113 observe: "Where the master knows or should know that an animal used by him is vicious * * *, he is liable for injuries to his servant caused thereby." Subject, of course, to the qualification that the vicious and dangerous propensities of the animal are unknown to the servant, and that he is not guilty of contributory negligence. The text is sustained by the following citations: *East Jellico Coal Co.* v. *Stewart,* 24 Ky. Law Rep. 420, 68 S. W. 624; *McCready* v. *Stepp,* 104 Mo. App. 340, 78 S. W. 671; *George H. Hammond Co.* v. *Johnson,* 38 Neb. 244, 56 N. W. 967; *Knickerbocker Ice Co.* v. *Finn,* 80 Fed. 483, 25 C. C. A. 579.

In *Arkansas Smokeless Coal Co.* v. *Pippins,* 92 Ark. 138, 122 S. W. 113, 19 Ann. Cas. 861, the court quotes with ap-

26

proval from 26 Cyc., *supra,* and from 4 Thompson on Negligence, sec. 404, as follows: "But if a master furnishes for the use of the servant a horse or other animal of such a vicious nature that the servant is liable to be injured in consequence of its viciousness, the master will be liable if he knew, or by the exercise of ordinary care could have known, of the vicious propensities of the animal, unless the servant knew that the animal was dangerous, but nevertheless continued to use it, in which case he assumes the risk of injury from it." See also 1 Labatt, Master & Servant, sec. 206.

In *Manufacturers' Fuel Co.* v. *White,* 130 Ill. App. 29, the vicious nature of the mule was shown to have been known to the company's boss driver, and it was held liable to an employee, seventeen years old, who was kicked by a mule that he had driven before.

In *Sloss-Sheffield Steel, &c., Co.* v. *Long,* 169 Ala. 337, 53 So. 910, Ann. Cas. 1912 B, 564, it was held that an employer was as much bound to furnish safe mules to operate its coal cars as to furnish safe tools; and that an employer who ordered his employee to hitch an unsafe mule, knowing that it was unsafe, or without exercising ordinary care to ascertain if it were safe, is liable at common law for injuries to the employee resulting from the dangerous character of the mule.

In *Stutzke* v. *Consumers' Ice and Fuel Co.,* 156 Mo. App. 1, 136 S. W. 243, where the plaintiff, who was driving for the defendant, was kicked by a mule in the stable while he was hanging up a collar on a peg after unharnessing him, the court said: "Plaintiff did not assume the risk of being injured through the defendant's negligence in knowingly and without warning furnishing a dangerous mule, he being ignorant of its character. It may be, as defendant argues, that mules, as a class, are dangerous, or 'apt' to kick; * * * At least, defendant should have exercised ordinary care to

furnish one not more dangerous than the usual run of mules. * * * It is probable that, if his master had not neglected to warn him that the mule he was working by was a lurking devil, he would have kept the vigilant watch which defendant now insists he should have kept."

To the same effect are the following cases: *Berenson* v. *Butcher,* 209 Mass. 208, 95 N. E. 220; *Scanlon* v. *Kavanaugh,* 210 Mass. 291, 96 N. E. 526; *Finley* v. *Conlan,* 152 App. Div. 202, 136 N. Y. Supp. 565; *Nooney* v. *Pacific Express Co.,* 208 Fed. 274, 125 C. C. A. 474, L. R. A. 1915B, 433.

In *Knickerbocker Ice Co.* v. *Finn, supra,* it was held that the question as to the viciousness of the animal and the defendant's knowledge were for the jury.

The foregoing cases are recent ones, and practically speak with one voice as to the liability of the owner for injuries to his employee in such circumstances as those disclosed by this record.

We are, therefore, of opinion that the circuit court erred in setting aside the first verdict, for which error its judgment must be reversed, and judgment will be entered for the plaintiff upon the original verdict, in accordance with the statute.

*Reversed.*