## Manufacturers' Fuel Company v. James White.

1. VICIOUS ANIMAL—*when master liable for injuries resulting to servant from.* A master is liable for injuries resulting to his servant through a vicious animal where the master has furnished such animal to the servant to enable him to perform his work, knowing the viciousness of such animal, the servant not knowing the same.

Action in case for personal injuries. Appeal from the Circuit Court of Christian county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

HOGAN & WALLACE, for appellant; R. F. FOLONIE, of counsel.

McQUIGG & DOWELL, for appellee; J. C. McBRIDE, of counsel.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

James White, by his next friend, brought suit in the Circuit Court of Christian county against the Manufacturers' Fuel Company to recover damages for an injury sustained by him as the result of being kicked by a mule while in the employment of the company. The jury returned a verdict in White's favor in the sum of $1,750 upon which the court entered judgment. The company appealed.

The *gravamen* of the charge in the declaration is that White was employed by the company to work as a mule driver in the coal mine of appellant, and that it was the duty of the appellant to furnish White a mule that was safe, docile and adapted to the work to be performed by appellee, but that said company ordered and directed him to use, in his labors, a certain mule named ''Pete,'' which said animal, when hitched to a heavy load, or overloaded, was unsafe and dangerous, because of his disposition to kick, which said habit or disposition was well known to said company; that said company failed and neglected to advise White of such dangerous disposition of such mule; that appellee was ignorant thereof; that by order of the company, appellee was directed to haul two loaded cars, which was an overload under the circumstances, with said mule; that in consequence thereof said mule viciously kicked and greatly injured said appellee.

The declaration contained the further averments that such danger of being kicked was not a danger incident to his employment, nor a risk assumed by appellee.

The evidence shows that the mule in question had been in use in the mine of appellant for several years prior to the time of the injury to appellee and that he was of the average or usual disposition of his species, except when he was overloaded or subjected to an unusual pull, in which event he became vicious and kicked. The evidence further shows that this disposition of the mule was well known to Charles Ellison, boss driver of appellant, then in charge of the drivers and mules employed in said mine, and was also well known to Moses Finnefrock, the mine manager of appellant.

Appellee, a boy seventeen years of age, had worked in the mine of appellant prior to his injury at different times in the capacity of extra driver, *i. e.*, he had no regular mule to drive, but drove different ones as occasion demanded. He had driven the mule called "Pete" before his injury, but had not been called upon prior to that time to haul more than one loaded car at a time with him. It further appears from the evidence that the mine superintendent became dissatisfied with the amount of coal that was being moved in said mine and so notified Ellison, the boss driver, who thereupon directed appellee to leave entries 7 and 8 of said mine, where he had been at work with said mule hauling single carloads, and go to entries Nos. 9 and 10 of such mine and make two-car trips. On the first day after such change appellee worked "Pete" in number 10, where he hauled his loads on a down-grade and had no trouble, but on the next day in number 9, upon the first attempt to have the mule pull *two* loaded cars, "Pete" viciously kicked appellee and so injured him that he was in the hospital for a considerable time, had to have one of his kidneys removed, and his life was despaired of for several weeks.

Appellant first argues that to charge the owner of the

mule with knowledge of its vicious disposition, such knowledge must come to a vice-principal of the corporation and that such vicious propensity must be to do some injury to "mankind." Upon the first feature of this contention it is enough to say that both the mine manager and boss driver, acting for appellant immediately prior to and at the time of the injury to appellee, testified that they had knowledge of the peculiarly vicious tendency of the mule. Finnefrock, the manager, said: "Pete's disposition to kick was known to me and to others there." Ellison, the boss driver, said: "If he was not overloaded or was not whipped, he was a good mule. No one had trouble with him when he had only one car." As the manager had a general supervision over the mine, and the boss driver had full control of the drivers and their mules, knowledge of the mule's propensity upon their part was notice to appellant.

While it may be true, as to the second feature of this contention, that evidence of the general viciousness of a domestic animal, or his disposition toward other domestic animals, is not competent to prove a propensity to attack or bite mankind, yet we do not perceive how that rule could have any force in this case where appellee was called upon to use the mule in question in the discharge of his duties as appellant's servant, and where appellee's use of the mule as a servant of appellant made it a means of service in the nature of an appliance. If the mule's particular vice made it likely that he would injure appellee in the service to which appellee had to put him while using him as directed by appellant, the employer would be liable so far as that feature of the argument goes, the same as he would be if he directed the servant to operate dangerous machinery in which there was a latent defect which he knew of, but did not disclose to the servant.

The next contention made by appellant is that appellee knew of the vicious disposition of the mule, or

by the exercise of ordinary diligence should have known of such propensity prior to and at the time of his injury and that therefore the risk was an assumed one. Considerable evidence was heard upon this subject. Some of the witnesses for appellant said that they had seen the mule kick before the time of the injury to appellee and that White had seen the same, and others had seen the mule run away on one occasion during the lunch hour. Upon the part of appellee, the claim that appellee had any knowledge of the disposition of the mule, was positively denied, and testimony was given tending to show that the mule that ran away was not Pete, but another mule called "Bill." The conflict in the evidence upon this subject was sharp, while a large part of it related solely to the disposition of the mule to kick only when he was overloaded, a matter that appellee, under the evidence, may have known nothing of until he was called upon to use Pete in making two-car trips.

This issue was purely one of fact for the jury and its determination depended almost wholly upon the credibility of the witnesses and the weight to be given to their testimony. From an examination of all the evidence upon that subject we do not think we can say that the verdict is so clearly or manifestly against the weight of the evidence that we would be warranted in setting it aside.

Appellant next argues that the court committed error in the admission of evidence upon the part of appellee; one claim being that it was error for witnesses to say "what the disposition of the mule was when he was overloaded" and another claim that it was error to allow witness to state "who directed the number of cars to be hauled" and also that it was error to permit appellee to state "what notice he had of the disposition of the mule." All the criticisms are made upon the ground that the answers amounted to a statement of conclusions and not facts.

This argument is not of a very persuasive character as nothing was elicited by the examination now complained of, as to the first two objections, even if technically correct, which was not in some other way fully covered or disposed of. The evidence was overwhelming to the effect that the mule would kick when overloaded and appellant practically admits that claim in his argument. The evidence of Ellison, the boss driver, was to the effect that he gave orders to the drivers as to what to do; while upon the subject of notice to appellee upon the disposition of the mule, appellee had a right to answer the questions as stated, denying knowledge upon his part of the mule's vicious propensity in view of the testimony that had preceded it, tending to show notice to him.

Appellee's first given instruction is not open to the criticism made by appellant. It merely told the jury, and we think properly, that in determining the weight to be given to the testimony of the witnesses they might take into account their intelligence and capacity or want thereof, in connection with all other facts and circumstances proven in the case. It did not authorize the jury to decide that the preponderance of the evidence was on the side which in their judgment was sustained by the more intelligent witnesses as was done in the case of Stubbings Co. v. World's Columbian Exposition Co., 110 Ill. App. 210, cited by appellant.

To review the other criticisms made by appellant upon the action of the court in giving and refusing instructions, would be to again discuss questions already disposed of in this opinion, would also be to render the same unduly long and could serve no good purpose. We find no prejudicial error in the record and believe substantial justice was done by the verdict.

The judgment is affirmed.

*Affirmed.*