**Francis M. Hoover, Administrator, Plaintiff in Error, v. Empire Coal Company, Defendant in Error.**

### Gen. No. 5,060.

1. MINES AND MINERS ACT—*who cannot maintain action.* Where a wilful violation of the provisions of the Mines and Miners Act results in injury to a party the statute gives such party an action for the direct damage sustained thereby; in case of loss of life by reason of such wilful act of violation, the right of action is given by the statute to the widow of the person so killed, his lineal heirs and adopted children, or to any person who was dependent for support upon the person so killed, for the recovery of damages for injuries caused by such loss of life; but the statute does not give a right of action to the administrator of the person so killed.

2. EVIDENCE—*when hearsay competent.* Hearsay evidence which has been received without objection will be treated as competent.

3. EVIDENCE—*what does not support substantive fact.* A statement made by a person killed in an accident which is not a part of the *res gestae* is not evidence, even though it may have been received in evidence without objection, which tends to establish the manner in which such person came to his death.

4. MASTER AND SERVANT—*when doctrine of assumed risk applies.* If an injury results to a servant from the balky habits of a mule known to such servant and not complained of by him, he cannot recover of his master.

5. MASTER AND SERVANT—*when declaration insufficient.* Held, that the declaration in this case was insufficient in that it did not aver that the servants whose negligence was alleged to have been the cause of the injury in question were not fellow-servants of the plaintiff's intestate.

6. MASTER AND SERVANT—*when declaration insufficient.* *Held,*
that the declaration in this case was insufficient in that it ad-
mitted that the plaintiff's intestate was fully aware of the unsafe
and dangerous character of the conditions and appliances in ques-
tion and made no complaint thereof but consented to use the same.

7. DAMAGES—*in action for death caused by alleged wrongful act.*
*Held,* that the evidence in this case, which showed that the plaint-
iff's intestate was not a regular contributor to the support of his
next of kin, was of such a character as to render it doubtful
whether or not more than nominal damages could be recovered.

Action in case for death caused by alleged wrongful act.  Error
to the Circuit Court of Mercer county; the Hon. EMERY C. GRAVES,
Judge, presiding.  Heard in this court at the October term, 1908.
Affirmed.  Opinion filed March 24, 1909.

W. J. GRAHAM, for plaintiff in error.

CHURCH & CHURCH, COOKE & WILSON and JACKSON,
HURST & STAFFORD, for defendant in error.

MR. JUSTICE WILLIS delivered the opinion of the
court.

On May 9, 1907, Williamson C. Hoover, while em-
ployed as a mule driver in the coal mine of defendant
in error and driving a mule hauling two loaded coal
cars along the eleventh west entry off the main south
hauling way, fell in front of the first car and the front
wheels ran over him and he therefrom received in-
juries which resulted in his death.  Plaintiff in error
was appointed administrator of the estate of said de-
ceased and brought this suit against defendant in er-
ror to recover damages for the loss to the next of kin
of said deceased occasioned by his death.  Plaintiff's
amended declaration, as amended, which will be here-
after called the declaration, contained nine counts.
The court sustained a demurrer to the fourth, seventh
and eighth counts.  Defendant filed a plea of not
guilty to the remaining counts and there was a jury
trial.  At the close of the evidence introduced by
plaintiff in error, the court directed a verdict finding
the defendant in error not guilty.  A motion by plaint-

iff in error for a new trial was denied and defendant in error had judgment for costs, from which plaintiff in error prosecutes this writ of error.

Plaintiff in error concedes that the evidence did not make a case under the ninth count. The sixth count was for a wilful violation of the statute relating to the operation of coal mines, and evidence was offered tending to show a violation of that statute. Where a wilful violation of the provisions of that statute results in injury to a party the statute gives him an action for the direct damages sustained thereby; and in case of loss of life by reason of such wilful violation of the statute a right of action is given by that statute to the widow of the person so killed, his lineal heirs or adopted children, or to any other person who was dependent for support on the person so killed, for a recovery of damages for injuries caused by such loss of life. It does not give a right of action to the administrator of the person so killed. Plaintiff in error therefore could not recover under the sixth count. It need not be further considered. The first, second, third and fifth counts will be assumed to be sufficient, after a plea of not guilty filed, to support a verdict for plaintiff in error, if the proofs would have warranted such a verdict.

Deceased was between twenty-one and twenty-two years of age. He had been working in the mine of defendant in error since he was fourteen years of age, but not all the time. There were thirty rooms on the eleventh west entry and at the time of the accident in question coal was being mined in all but two of them. On the day of the accident, deceased and three others were engaged in hauling the coal from these rooms to the main south hauling way, where other appliances conducted the cars to the mouth of the shaft. Each driver drove one mule hauling two cars. They went into the entry together hauling in and setting out empty cars, and then they went to such rooms as they were directed to by Curtis, one of their number, and

took out loaded cars and drove with them to the main south hauling way. The two cars were hooked or coupled together. The cars ran upon iron rails resting upon ties laid in the bottom of the entry. Two traces from the collar or harness of the mule were attached behind the mule to a single-tree or butt-stick, which was kept from falling down by straps from the mule's back. One end of the chain, called a tail-chain, was hooked into the single-tree. The other was attached to a hook on the front end of the front car. There was no place on the front end of the front car where the driver could ride in a sitting posture. Some cars had a bumper projecting out in front and some did not. Where there was a bumper it was the practice in this entry for the driver to ride with one foot on the bumper and the other foot on the tail-chain, and with one hand holding on to the car and the other resting on the mule. The tail-chains used in this mine were of different lengths, and each driver could select a chain to suit himself. We find no proof in this record as to whether there was or was not a bumper on the front end of this car. Deceased was injured at one or two o'clock in the afternoon. A witness who came on duty at nine o'clock that night testified that he then found five cars standing at that point, and that the coal on the front end of the front car projected over so that it did not leave a good footing for the driver. Plaintiff in error failed to prove that this was the car which deceased was riding upon when he met the accident, and failed to prove that it was then in the same condition as when deceased was injured. The front wheels were off the track and the coal might have been moved by the sudden stopping of the car. The evidence of this witness was therefore finally excluded. There remains therefore in the record, so far as we are advised, no evidence that there was any lack of proper footing on the front end of the car.

There was proof that there was no brake on the car, but deceased had worked in the mine off and on for

over seven years and there is no proof that there were ever any brakes used on any coal cars in this mine. There were two places in this entry where in going out the cars ran down a slight declivity, and deceased was injured in going down one of these depressions. A sprag was sometimes used by a driver to check the speed of a car in going down an incline, and the proof showed that deceased did not have a sprag. But the proof also showed that there were sprags in the mine, kept where a miner could get one whenever he chose. There was proof of gob piled on the south side of this passage, and that there was water under and along the ties for some distance just back of the place where deceased was found, and that there were poor joints along this track, which caused the cars to rock as they passed along over these joints, and that there was no light in this entry except from the lamps carried upon the caps of the workmen. But there was nothing from which the jury could find that any of these conditions caused or contributed to the injury to deceased. Moreover, these conditions must have been well known to deceased, as he had been driving in this entry for three days and taking out twenty to twenty-five trips per day under these conditions, and had made no complaints, and clearly assumed whatever risks arose therefrom. With the exception of one item of evidence, there is no proof from which the jury could find how deceased came to get under this car. The man following him ran into his rear car, and stopped, and went forward and found deceased lying between the wheels of the front car, with his head upon the south rail and one foot projecting beyond the north rail and his body in such a position that it lifted the front wheels about two inches above the rail. But there was nothing in the surroundings from which any one could judge how he came to be in that position. The only testimony having any tendency to show how deceased received his injuries was the evidence of a physician who attended deceased after he had been

removed to his brother's home, and who testified that his brother asked deceased how he got hurt, and that deceased said that the mule backed up and that he went down.  No objection was interposed to this testimony and it therefore is to be treated as competent, but that conversation was not a part of the *res gestae,* and we fail to see how proof that deceased made that statement is any proof that that was the manner in which deceased came to go under the car.  It is proof that he made the statement, but not proof of the fact. With that eliminated there is nothing from which the jury could reasonably find how deceased came to his death.  If, however, we assume that this statement by deceased was proof that he received his injuries in that manner, then it is necessary to consider the evidence relating to this mule.  The mule had hauled cars in the mine for several years.  He was very slow. When he hauled loaded cars down a declivity he was disposed to hold back and let the car strike him, and other drivers, when previously driving this animal, had been caught and squeezed between the car and the mule, and had frequently complained to their superiors that the mule was dangerous.  When this mule came to where there was water in the track he was in the habit of jumping to the side in an effort to avoid the water.  If a miner in front of him gave a signal to stop he would stop and let the car run against him. The brother of deceased knew of these characteristics of this mule, and knew that deceased was driving this mule, and had warned deceased about him.  Notwithstanding that warning, deceased continued to use him, and this was the afternoon of the third day during which he had been driving this mule while hauling loaded cars down these declivities and over these wet places.  He had made twenty or twenty-five trips each day.  If the mule was accustomed to hang back and let the car run against him and thus slacken the chain and endanger the position of the driver, deceased could not have failed to be thoroughly cognizant of

these facts. He continued to use this mule; and his superior, called as a witness by plaintiff in error, testified that deceased made no complaint of the mule. Under such circumstances it would seem clear that he assumed all the risks of working with said mule, and could not have recovered for injuries caused by the actions of the mule, if he had lived and brought the suit himself. If the facts would not have given deceased a cause of action if he had lived, his administrator could have no cause of action.

It is argued that the court erred in sustaining the demurrer to the fourth, seventh and eighth counts of the declaration. Each of these counts described fully the business in which defendant in error was engaged and the employment of deceased by defendant in error as a mule driver, and that he was engaged in driving a mule hauling cars loaded with coal along said passageway towards the main shaft, with due care and diligence. The fourth count alleged that deceased fell from his position on the trip in front of said trip of cars upon the track; that defendant in error negligently permitted its trip of cars to be moved along said passage so close together as to be dangerous to the lives of those laboring in the entry, and negligently failed to provide any means of warning deceased or others working in said entry of the approach of trips of cars along said entry, so that it was impossible for deceased to know of the approach of such trips of cars and to guard himself from injury therefrom; that defendant in error also negligently failed to furnish the necessary lights in said entry and to provide and to enforce the necessary rules and regulations and the necessary trappers, flagmen and spragmen or any method of warning deceased and others of the approach of trips of cars in said entry; and that while deceased was lying in said entry on said hauling track, another trip of cars, driven by a servant of defendant in error, collided with the trip which deceased had been driving and struck the same a violent blow from

behind and forced the wheels of the car deceased had been driving upon his body, crushing it, and that this was because of the negligence of defendant in error in not having the necessary trappers, flagmen or sprag-men, and not furnishing necessary lights, and in not making and enforcing necessary rules and regulations and not providing any means of regulating the distance between the trips of cars, and not warning deceased of his danger; and the count averred that deceased, when he fell upon the earth in said mine, did not know and had no opportunity of knowing, that he was in a dangerous position on account of the close proximity of said trip of cars, and did not have an equal opportunity with defendant in error to know the same, and that defendant in error well knew that said trip of cars traveling in said entry without warning to deceased of its approach was dangerous to deceased. It will be observed that the only lack of knowledge of existing conditions which this count attributes to deceased was that he did not know that the close proximity of another trip of cars was dangerous to him. It is obvious from the framework of this count that each of these trips was accompanied and controlled by a driver, a servant of defendant in error, and there is no averment that these were not fellow servants with deceased, and it is plain that if the car behind negligently struck the trip of cars driven by deceased, this was the negligence of a fellow servant of deceased. It is not shown how flagmen, trappers or spragmen were necessary, or why reasonable care by defendant in error would have provided them, nor what service they could have performed that would have avoided this accident, nor what rules and regulations were necessary, nor what rules and regulations did prevail, nor wherein they were defective. Construing the count against the pleader, it concedes that deceased knew that there were no rules, regulations, lights, flagmen, trappers or spragmen used in running these trip cars, and knew what dangers arose from

their absence. It therefore concedes that he assumed all these risks, and it must be construed to concede that the running of the trips so close together was the negligence of a fellow servant.

. The seventh count alleges that defendant in error had negligently constructed an entry that was dangerous to the lives of deceased and its other employes working in said entry; and negligently failed to furnish deceased with safe appliances for performing his work, but required him to work with appliances known to defendant in error to be dangerous to the life of deceased, and by this negligence he was thrown or fell from the car he was then driving and under the wheels of said car, and was crushed. Under the rules of pleading this count admits that deceased was fully aware of the unsafe and dangerous character of these conditions and appliances, and made no complaint thereof, but consented to use the same, and thereby assumed the risk arising from such use. This count is defective in other respects.

The eighth count alleged that defendant in error negligently required the mule drivers to conduct said trips of cars down said inclined plane, and failed to provide any means of preventing collisions, and failed to provide a switch at the top of the inclined plane where cars could be collected and hauled to the main entry by other means, and that it was dangerous to the life of deceased to haul cars down said inclined plane, and that deceased had complained to defendant in error of the unsafe condition of said inclined plane, and that defendant in error had promised that it would provide a suitable switch at the top of the hill so that deceased would not be required to drive cars down said inclined plane, and that deceased relied upon this promise, and that as he was conducting a trip down the hill another trip of cars collided with the cars on which deceased was riding and threw him to the ground in front of the cars, and by force of gravity the cars ran upon his body and crushed it. It is not

charged how long this condition had existed, nor when this promise was made, nor whether or not a sufficient length of time had elapsed to enable defendant in error to perform the promise nor that deceased did not continue in the employment after a reasonable time had elapsed and he knew that the promise had not been performed, nor is it shown by the count that the building of the switch at the top of the hill would have prevented this accident. The count charges that these other trips were driven by other employes of the defendant, and it is not averred that they were not fellow servants of deceased, and the negligence of fellow servants in running said other trips of cars is not excluded. We therefore conclude that the court did not err in sustaining the demurrer to these counts. It is also to be said that most of the proof which these counts would have permitted was introduced under other counts of the declaration to which the demurrer was not sustained, and that plaintiff in error seems to have had the benefit of all proof which would have been admissible if issue had been joined on these counts.

The father of deceased had died several years before. He had been supporting his mother till about three months before this accident, when she died. His living next of kin were brothers and sisters, all of whom were married and living with their own families. Deceased lived with one of them, and did some work and made some presents apparently in lieu of paying for his board. He gave small sums to his other next of kin. It is a matter of great doubt whether the circumstances would entitle the administrator to recover more than nominal damages on their behalf, but we deem it unnecessary to consider or decide this question.

For the reasons stated the judgment is affirmed.

*Affirmed.*