JANE M. ARMINGTON, Admx. *vs.* PROVIDENCE ICE COMPANY.

MARCH 9, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)　Negligence.　Notice.　Animals.　Assumed Risk.*

Plaintiff's intestate, an employee of defendant, while harnessing a pair of "green" horses, which were nervous and high spirited, but not of a vicious disposition, was killed. Prior to the accident the horses while being broken had attempted to run. Intestate was an experienced horseman. In addition to the knowledge which he had that the horses were nervous and

high spirited·and had repeatedly tried to break away while being hitched, it appeared that he had been specially warned as to their character and disposition, and understood the warning.

*Held,* that defendant was not guilty of negligence in failing to give notice to intestate and he assumed the risk against which he had been warned.

TRESPASS ON THE CASE for negligence.    Heard on exceptions of defendant and sustained.

### RESCRIPT.

Defendant's exception to the refusal of the Superior Court to direct a verdict for the defendant sustained.    The plaintiff may therefore show cause on March 15, 1912, why the case should not be remitted to the Superior Court, with direction to enter judgment for the defendant.

The following opinion was prepared by Mr. Justice Blodgett as the opinion of the Court, but was not formally rendered on account of his death.    It is now adopted as the opinion of the Court.

BLODGETT, J.    The plaintiff's intestate was killed while engaged as an employee of defendant, harnessing a pair of defendant's horses, and this action is brought by his widow and next of kin to recover damages for such death.    At the close of the testimony in the Superior Court the defendant moved for the direction of a verdict on the ground that no negligence of the defendant had been proven and also that the plaintiff assumed the risk of the accident in question, which motion was denied.    The defendant duly excepted to said denial and after verdict for the plaintiff has brought the cause to this court upon said exception.

The evidence is undisputed that the horses in question were what is known as "green" horses, and were nervous and high spirited, but it is equally uncontradicted that they were not of a vicious disposition.    There is evidence too, that at some time prior to the accident, the horses in question while being broken to the use of a wagon of the weight and size of an ice-wagon, had attempted to run.    It was conceded that

Armington, the deceased, was a skilled horseman of nearly twenty years' experience in driving all kinds of horses and the real question therefore is as to the notice which he had of the character and disposition of these horses. On that fact the uncontradicted testimony of plaintiff's witness, Corcoran, a fellow driver and eyewitness of the accident is as follows: (p. 19) "Q. 127: They had seemed nervous? A. Nervous. Q. 128. And that was apparent to both of you, was it not? A. Yes; more so, the off horse." . . . (p. 20). "Q. 133. Now, I understood you to say they sometimes acted as if they would like to break away. Was that during the four days you and Mr. Armington were using them on the wagon? A. Yes, they always were naturally nervous, hitching them up." . . . (p. 21) "Q. 140. And Mr. Armington knew that the horses were green and you and he discussed it, didn't you, somewhat? A. The only thing Mr. Armington knew, to my knowledge, that they were green horses. Q. 141. He knew they were green horses? A. Knew they were green horses. Q. 142. And you spoke to each other about their being nervous and high strung, didn't you? A. No, I don't recollect saying anything to Mr. Armington to that effect anything more than he could see for himself. Q. 143. It was perfectly apparent, wasn't it, that the horses were high strung and nervous and needed particular care? A. Yes, sir, it was. Q. 144. I understood you to say he was a man experienced with horses. He wasn't a new man around horses? A. No, sir, he was a man that had drove for years. Q. 145. He didn't make any complaint to you about this team in any way? A. No, sir."

The undisputed testimony of Brennan, the defendant's superintendent, is as follows, p. 65: "Q. 42. What did you tell Mr. Armington? A. I told him I should put his route on on Monday and that he was to take the pair of horses that Corcoran was exercising. Told him they were green horses and I wanted him to chain the wheels at every stop; also I didn't want either of the horses to leave the barn without one or the other had hold of each horse and they were both

to be with them, one to look out for them at their heads and the other to hitch. Q. 43. Did he say anything? A. Said, 'All right.'"

Likewise the testimony of the defendant's witness, Sweet, is uncontradicted, as follows, p. 75: "Q. 27. Did you have any conversation with Armington at that time? A. I did. Q. 28. What was it? A. I made the remark to Armington that I understood he was going to have this team. Q. 29. Did you characterize the team? A. Yes. I said the green pair of grey horses. Q. 30. What did he say? A. He says, 'Yes.' 'Well,' I said, 'I understand they are pretty high strung and you want to look out for them.' Q. 31. Did he make any answer? A. He did. Q. 32. What did he say? A. Said, 'I am not afraid of them.' Said, 'They are all right.'"

(1) The foregoing extracts from the testimony show that, in addition to the knowledge which Armington had that these horses were nervous and high-spirited and repeatedly tried to break away while they were being hitched to the ice-wagon, Armington was specially warned as to their character and disposition and understood the warning. Under these circumstances we see no negligence on the part of the defendant and are of the opinion that Armington assumed the risk against which he had been warned. It follows that the defendant's exception to the refusal to direct a verdict for the defendant must be sustained.

*Ralph M. Greenlaw, Waterman, Curran & Hunt,* for plaintiff.

*Vincent, Boss & Barnefield, Alexander L. Churchill,* for defendant.