[L. A. No. 3484. In Bank.—November 11, 1916.]

## PLINNIE ENOS ARTHUR, Respondent, v. MERCHANTS' ICE AND COLD STORAGE COMPANY (a Corporation), Appellant.

NEGLIGENCE—MASTER AND SERVANT—ASSUMPTION OF RISK.—Under section 1970 of the Civil Code, as amended in 1907, a servant assumes the ordinary risks of the business upon which he enters, so far as those risks, at the time of his entering upon the business, are known to him, or should be readily discernible by a person of his age and capacity. He does not assume any risks which are not thus known or discernible.

ID.—DUTY OF MASTER TO WARN SERVANT.—The master must give warning to his servants of all perils to which they will be exposed, of which he is or ought to be aware, other than such as they should, in the exercise of ordinary care, have foreseen as necessarily incident to the business, in the natural and ordinary course of affairs.

ID.—DRIVING VICIOUS HORSE—EXTENT OF WARNING.—An employer is not required to give his employee minute directions as to the character of the danger he incurs in driving a vicious horse and the means of avoiding them, if any there be, when the employee himself has experience in such matters, and is as well acquainted with the dangers from such horses, and the means of escape or protection, as the employer whose duty it was to warn him.

ID.—KNOWLEDGE BY EMPLOYEE OF VICIOUS CHARACTER OF HORSE.—In this action by a driver of a wagon to recover damages for personal injuries resulting from a kick by a horse, the evidence shows that the plaintiff was fully informed that the horse was addicted to kicking and was, for that reason, a source of danger.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

George Beebe, for Appellant.

Morton, Hollzer & Morton, W. O. Morton, Harry A. Hollzer, Claude B. Morton, and Frank M. Fowler, for Respondent.

SLOSS, J.—A hearing in Bank having been ordered after decision in Department One, we have carefully re-examined the case. The department opinion, prepared by Shaw, J., reads as follows:

"In this case the defendant appeals from the judgment and from an order denying its motion for a new trial.

"The plaintiff sued for damages arising from the alleged negligence of the defendant. The defense was that the injury to the plaintiff arose from a danger incident to the employment, that the plaintiff was informed thereof and that he assumed the risk of injury therefrom.

"The law on the subject is well settled. Section 1970 of the Civil Code, as amended in 1907, was in force at the time of the injury, July 8, 1911. It provides that knowledge by an employee of dangers to himself incident to the work does not prevent his recovery for an injury therefrom, unless it appears that he 'fully understood, comprehended and appreciated the dangers . . . and thereafter consented' to proceed with his work. The question here is whether the evidence shows that plaintiff was fully informed that a horse behind which he was to work was addicted to kicking and was, for that reason, a source of danger. 'A servant is held to assume the ordinary risks of the business upon which he enters, so far as those risks, at the time of his entering upon the business, are known to him, or should be readily discernible by a

person of his age and capacity.' (1 Shearman & Redfield on Negligence, sec. 185.) 'A servant does not assume any risks which are not thus known or discernible.' (*Id.*, sec. 185a.) 'The master must give warning to his servants of all perils to which they will be exposed, of which he is or ought to be aware, other than such as they should, in the exercise of ordinary care, have foreseen as necessarily incident to the business, in the natural and ordinary course of affairs.' (*Id.*, sec. 293.) (See, also, *Baxter* v. *Roberts,* 44 Cal. 187, 192, [13 Am. Rep. 160]; *Rodgers* v. *Central Pac. R. Co.,* 67 Cal. 608, [8 Pac. 377], and *Bone* v. *Ophir etc. Co.,* 149 Cal. 294, [86 Pac. 685].)

"A kick from a horse belonging to the defendant broke the plaintiff's leg. The defendant was engaged in the business of manufacturing and selling ice in Los Angeles. The ice was delivered in wagons drawn by horses and operated by two men, a driver and a helper. The wagons were fitted with but one seat situated at the front immediately behind the horses. On this seat the driver and helper would sit while going from place to place on the route. Plaintiff had been in the service of the defendant for about a year prior to the injury, part of the time as a driver, and part of the time as a helper. Just prior to the day of the injury he was assigned to a new route, and on that day he was directed to ride on a certain wagon on which one Gardner was driver and one Nearon was helper, for the purpose of learning a part of the new route. He was to sit on the seat between the driver and the helper as they passed over the route. The horse, "Ned," attached to this wagon was addicted to kicking viciously while being driven. This propensity was known to the defendant's agent and servants in charge of the horses, but was not known to the plaintiff until that morning before he began the work. Plaintiff, as above stated, had been working with the defendant's horses for about a year, and he also had had some experience with horses, and had been around them more or less during his life. Although his testimony is evasive in some respects, he, in effect, admitted that when about to start on the route that morning, Gardner, the driver, told him that the horse Ned was a bad one to kick and to look out for him, that he talked with Gardner about it during the forenoon as he rode on the wagon, that in the afternoon, before the injury, he accosted Robinson,

the defendant's route superintendent, and asked if he could not have Ned to drive on the following Monday when he was to begin his new route, saying that with proper handling he could break the horse of the habit of kicking, that Robinson said 'You don't want him,' that he was a bad one and to look out for him, and that he, Robinson, had known the horse for two years, and that he was given to kicking, and was sure to kick when the whip was used, or when the line got under his tail. Gardner and Nearon were present at that time. Both Gardner and Nearon testified that the plaintiff was warned by Gardner and Robinson, as above stated. Robinson also testified to the same effect with respect to the conversation in the afternoon. The injury occurred a short time after the conversation with Robinson, and while plaintiff was riding on the wagon sitting on the seat between Gardner and Nearon. This comprised all the testimony on the subject of his information regarding the character of the horse and his conduct with respect thereto. There is no substantial conflict in the testimony between the several witnesses who testified on that subject.

"It is manifest from this testimony that the plaintiff was warned of the vicious character of the horse and of the particular trait which made him dangerous to persons riding on the seat behind him. With knowledge of this danger plaintiff proceeded on his work. Under the rule stated in the above-cited authorities he must be presumed to have taken upon himself the risk of the danger which he incurred and he cannot hold his employer liable for the injury received in consequence thereof.

"The evidence shows that the bottom of the wagon body upon which the plaintiff's feet rested while sitting on the seat where he was injured was about three and a half feet above the ground. It does not appear how far it was from the horse. Plaintiff's counsel claim that there was evidence to the effect that the horse Ned was an unusually high kicker, and that the defendant's servants failed to inform plaintiff of that fact. This claim is based on testimony of the plaintiff to the effect that after he recovered from the injury Robinson told him that the 'horse once got him and kicked the whole shirt off of him.' He did not state the relative positions of himself and the horse when this occurred, nor that he was on the seat of a wagon drawn by the horse. Robinson

did not have charge of the horses, and it was not his duty to assign the plaintiff to work behind any particular horse. He was the route superintendent. His duty was to assign drivers to their routes. The man in charge of the stable chose the horses to be hitched to particular wagons. Robinson's information concerning this horse was given to the plaintiff casually while he was in the course of his employment as route superintendent, and not in the discharge of any duty of the defendant to the plaintiff with respect to the horse. It does not appear that it was any part of his duty to act for the defendant in informing the plaintiff of the character of the horse. Furthermore, it cannot be said that the law requires the employer to give to his employee minute directions as to the character of the dangers he incurs and the means of avoiding them, if any there be, when, as in this case, it appears that the employee himself has experience in such matters and is as well acquainted with the dangers from such horses, and the means of escape or protection, as the defendant's servants whose duty it was to warn him. (1 Shearman & Redfield on Negligence, sec. 203, note 16.) We think the court erred in denying the motion for a nonsuit and in refusing to grant a new trial.

"The judgment and order are reversed."

We are satisfied that the foregoing opinion makes proper disposition of the material questions involved in the appeals. A few words of answer to the criticisms contained in the petition for hearing in Bank may not be amiss.

The respondent makes complaint of the statement in the opinion that he had been told that the horse "was a bad one to kick," and that he had asked to have the horse to drive, saying that he could break him of "the habit of kicking." It is claimed that, according to the plaintiff's testimony, he had been told, merely, that the horse was a bad one; he did not remember that anything had been said about kicking. But a reading of the entire testimony given by plaintiff must convince any fair mind that he *had* been informed that the horse was given to kicking. Despite the caution with which he sought to guard his testimony, the statements made by him were pregnant with admissions which fully justify the declaration in the department opinion.

Beyond this, it is strongly urged that the evidence warranted the inference that the plaintiff did not fully under-

stand the dangers involved in his employment, inasmuch as
he had not been warned that the horse could kick a man
occupying the wagon seat.   This contention implies that there
is something unusual in the kind of kick which injured plain-
tiff, and, consequently, that mere knowledge that a horse
would kick would not lead one to suppose that he would
kick to the height reached by this horse.   The difficulty with
this argument is that, if it be assumed that plaintiff's in-
formation did not include knowledge of the danger inherent
in his position, there is nothing in the case to indicate that
the defendant had such knowledge.   The gist of an action
for injuries caused by a vicious animal is the defendant's
keeping of the animal *with knowledge of his vicious propen-
sities.*   (*Haneman* v. *Western Meat Co.,* 8 Cal. App. 698, [97
Pac. 695] ; *Barrett* v. *Metropolitan Contracting Co.,* 172 Cal.
116, [155 Pac. 645].)   The plaintiff here relies on the negli-
gence of his employer in directing him to ride behind a dan-
gerous animal.   If a man was in no apparent danger from
riding on the seat of the wagon behind a horse that would
kick, it was not negligent for the defendant to direct him
to so ride.   On the plaintiff's theory he was bound to show,
not only that he did not know that the horse was an unusually
high kicker, but that the defendant was, or ought to have
been, aware of this fact.   At this point the evidence fails.
Certainly the necessary fact cannot fairly be inferred from
the vague and perhaps figurative statement of Robinson that
the horse "once got him and kicked the whole shirt off of
him."   Furthermore, this statement was made by Robinson,
as plaintiff testified, five months after the injury, at a time
when plaintiff was asking Robinson for re-employment.   It
was not shown that Robinson was then, or at any other time,
empowered to speak for the defendant on that subject.   A
statement so made is not competent evidence of defendant's
knowledge, at the time of the injury, of the vicious character
of the horse.   The witness Gardner, who had warned plaintiff
about the horse, does not appear to have been aware of the
animal's unusual agility (if it was unusual), his testimony
being that he did not think the horse would kick "that high,
quite."   If, then, the plaintiff founds his right to recover
upon the fact that he was subjected to a danger beyond that
ordinarily attaching to the driving of a kicking horse, he did
not meet the burden resting upon him to show that defendant

was negligent in subjecting him to this unknown and hidden danger.

The judgment and the order denying a new trial are reversed.

Shaw, J., Melvin, J., Lawlor, J., and Henshaw, J., concurred.