## BOATMAN vs. MILES
### (No. 1003; Decided August 6, 1921; 199 Pac. 933.)

ANIMALS—MASTER AND SERVANT—DUTY OF OWNER OF DANGEROUS
ANIMAL TO APPRISE SERVANT OF ITS NATURE—ACTION FOR INJURIES
BY VICIOUS ANIMAL—DAMAGES—ASSUMPTION OF RISK—ESSENTIAL
ELEMENTS OF ASSUMED RISK—QUESTIONS FOR THE JURY—NEGLI-
GENCE OF EMPLOYER—EXTRAORDINARY RISKS—KNOWLEDGE OF SER-
VANT AS AFFECTING CHARACTER OF ASSUMED RISK.

1. Where the sole ground of appeal is that a verdict and
   judgment for plaintiff is not sustained by the evidence,
   the testimony tending to sustain plaintiff's case will be
   taken as true.

2. In an action by a servant against his employer for personal
   injuries inflicted by a stallion owned by the latter, evi-
   dence of violent tendencies of the animal prior to the in-
   jury held sufficient to show him to be actually vicious,
   and knowledge of the fact will be imputed to a defend-
   ant who had owned him over a year.

3. In an action by a servant against his employer for injuries
   inflicted by a vicious stallion owned by the latter, evi-
   dence of plaintiff's inexperience with horses and that he
   was not warned by his employer that the animal was
   vicious, but on the contrary was told by his employer that
   the animal was gentle upon which statement he relied,
   held sufficient to warrant the jury in finding that defend-
   ant was negligent and liable for the injuries received by
   plaintiff.

4. The risks assumed by a servant, stated generally are: (1)
   such dangers as are ordinarily and normally incident to
   his occupation, and a workman of mature years is pre-
   sumed to know them, whether he does or not; (2) such
   extraordinary or abnormal risks which he (a) knows and
   appreciates and faces without complaint, or which (b)
   are obvious or apparent.

5. A master is bound to warn his servant of all abnormal or
   extraordinary risks of the employment, but not ordinarily
   of obvious risks, nor generally of ordinary risks unless
   secret dangers exist of which he has knowledge and the
   servant has not.

6. To give a vicious animal into the charge of an employee
   not employed for the specific purpose of attending such

an animal is prima facie negligence and places the risk therefrom outside the pale of ordinary dangers. Such a risk is extraordinary and is not assumed unless it appear that the employee was fully warned, or that without warning he knew, or should have known and appreciated the danger. But there is no legal presumption that a servant employed to care for animals should have knowledge of their vicious character.

7. In an action by a servant against his employer for personal injuries inflicted by a vicious stallion owned by the latter, which had on previous occasions, shown violent tendencies but which the employer had represented to be gentle, the question of knowledge on the part of the servant as to the vicious character of the animal was properly submitted to the jury.

8. An assumption of risk is not predicable from knowledge of the conditions alone; it must further appear that the danger was, or should have been appreciated, in order that it may be said that there was an intelligent and deliberate consent, which is one of the essential elements involved in the conception of an assumption of risk, but while appreciation of danger may be inferred from complete knowledge, if that knowledge is excusably imperfect, the servant's action for injuries received will not be barred.

9. A servant has a right to rely on representations and assurances of his master as to the absence of danger, and if he is lulled into security, thereby he may recover for injuries received, unless the danger be so apparent that notwithstanding such assurances a reasonably prudent person would not have incurred it, and in such case it is for the jury to determine the facts.

10. The mere fact that the apprehension of a servant as to possible injury was excited by the circumstances, will not in the face of assurances of safety given by the master, render the employee chargeable as a matter of law, either with an assumption of risk or with contributory negligence.

11. In the relation of master and servant, obvious risks of employment are distinct from known and appreciated risks, though both belong to the class called extraordinary; the latter is based on actual, the former on imputed, knowledge. The existence of either as affecting the question of contributory negligence may properly be left to the jury.

APPEAL from the District Court of Natrona County; HON. RALPH KIMBALL, Judge.

Action by Roy Boatman against James H. Miles for the recovery of damages for personal injuries inflicted by a vicious stallion owned by defendant, which occurred while the plaintiff was in the employ·of the defendant, and working with the animal in question as a part of his general duties. The material facts are stated in the opinion. From a judgment for plaintiff, defendant appeals.

*W. L. Wilson* and *Geo. W. Ferguson,* for Appellant.

The action was for damages claimed by the plaintiff on account of alleged injuries caused by a vicious stallion owned by appellant. Appellant moved for a directed verdict which was over ruled. It is contended that the evidence is insufficient to support the verdict and judgment; the owner of a domestic animal is not liable for an injury committed by it to an employee who has the care of the animal unless he knows of its vicious disposition and the servant is ignorant thereof, and that the negligence of the servant has not contributed to the injury. (Todd v. Danner, 46 N. E. 829; Borman v. City of Milwaukee, 67 N. W. 924; (Wis.); Missouri Valley Bridge and Iron Co. v. Ballard, 53 Tex. Civ. App. 110; St. Louis Natl. Stock Yds. v. Morris, 116 Mo. App. 107; Clark v. Missouri K. & T. R Co., 77 S. W. 822 (Mo.)) To hold defendant liable for the alleged injuries is to make him an insurer of his servant. The action is based on the ignorance of the respondent of the alleged vicious character of the stallion and the negligence of the appellant in failing to warn respondent of the same, and the case was tried on that theory. The evidence fails to support the verdict which was evidently returned through sympathy for the respondent.

*Floyd E. Pendell,* for Respondent.

Mr. Miles was a man of large experience in handling stallions and as is shown from the evidence, knew the vicious tendency of the stallion, which injured plaintiff, but never-

theless assured the plaintiff that the horse was gentle, thus inducing him to continue in the service of defendant. Defendant was therefore liable for the injuries. (2 Cyc. 377. 3 C. J. 396. Deliside v. Burroughue, 54 L. R. A. 420; Clowdis v. Fresno Co., 45 Pac. 1041; Rider v. White, 22 Am. Rep. 600; Kitridge v. Elliott, 41 Am. Dec. 717; McCaskee v. Elliott, 53 Am. Dec. 706; Brown v. Green, 42 Atl. 991; Kenmore v. Gilmore, 131 U. S. 22.) The jury passed upon the weight of the evidence and their finding should not be disturbed. (3 Ency. of Ev. 753.) The presumptions favor a verdict. (4 C. J. 773.) The finding of the trial court will, on appeal be presumed to be supported by the evidence. (4 C. J. 777.)

BLUME, J.

This is an action brought by appellee, plaintiff below, against appellant, defendant below, in Natrona County, on account of severe and permanent injuries inflicted upon him by a vicious stallion of the appellant while plaintiff was in the employ of the defendant. The case was tried to a jury. At the conclusion of plaintiff's testimony defendant moved for a directed verdict. This motion was overruled. A like motion was made by defendant at the conclusion of all the evidence. This, too, was overruled. The jury returned a verdict for plaintiff in the sum of $3000, and judgment was entered thereon. The case is here on direct appeal, and the only question argued is, that the verdict is not sustained by the evidence, for the reason that it appears that the appellee had just as much knowledge of the vicious character of the stallion as appellant, and for that reason assumed, as a matter of law, the risk of his employment, and that the injury was the result of his own fault. For the purpose of this case, therefore, we must take the testimony, tending to sustain plaintiff's case, as true.

Appellant was shown to have been, at the time of the accident in question, about 40 years of age, with 19 years' experience in ranching. He bought the stallion in question in

Casper and owned it from May, 1916, to the time of the accident, on June 11, 1917, and during most of this time handled it personally. He owned it during part of the breeding season in 1916 and during the whole of it in 1917. He had owned several stallions prior to the one in question, so that he must have been fairly familiar with stallions in general. He knew that during breeding seasons they are apt to be more vicious than at other times. Two witnesses testified to vicious propensities of the stallion, manifested while it was still at Casper, shortly before the appellant purchased it. It had a habit, as was shown, of "nipping" at persons approaching. On June 10, 1917, the day before the accident in question, while appellee was riding on a horse, the stallion ran behind him, bit a "chunk" out of the saddle, caught the horse by the neck and injured appellee slightly on the leg. This was in the presence of appellant, who remarked to the witness Stevenson that the boy should have had something with him for protection. Other manifestations of viciousness, comparatively slight, were manifested, to the knowledge of appellant, by the stallion during that day. On the evening of June 11, appellee went to get it out of a corrall, approaching on foot. The animal struck him, bit him, made him unconscious, and permanently injured his right arm, to which medical attention was given for many months. The nature of the attack showed the stallion as actually vicious. (Mailhot v. Crow, 99 Wash. 623, 170 Pac. 131; Webber v. Hoag, 8 N. Y. S. 76; Perrotta v. Picciano, 175 N. Y. S. 16.) Later, after appellant had sold the stallion, it attacked another boy, and "ran at" those coming up for relief, who, apparently in self-defense, shot it. It is true that the testimony does not disclose that any manifestations of viciousness prior to June 10th were communicated to the appellant, who claimed that the stallion was gentle. But he had been the owner of it for over a year. It is not likely that the temper of the animal changed over night. The jury had a right to consider common experience. The stability of characteristics, inborn or acquired, is well known,

and manifested alike in the vegetable and animal world. The traits exhibited by us in childhood are often still noticed when we reach the age of maturity. A balky horse is apt to be always balky. A gentle kitten is apt to manifest that gentleness in early life. Changes in nature are generally slow; sudden, radical changes the exception. For this reason evidence of viciousness by an animal subsequent to an accident, acting, as it does, according to its natural instincts, is admitted. (Kennon v. Gilmer, 131 U. S. 22 and cases cited. Marks v. Lumber Co., 77 Ore. 22, 149 Pac. 1041; Thornton v. oyle, 33 Ky. L. 382, 111 S. W. 279, 17 L. R. A. (N. S.) 1233.) And for that reason too, the jury had a right to infer that the stallion in question was vicious long before June 11th, and in view of the fact that the appellant owned it for over a year, and had been its attendant, the jury had the further right to infer that despite the claim of appellant, he was in fact, or should have been, fully apprised thereof. (Hosmer v. Carney, 228 N. Y. 73, 126 N. E. 650; McGovern v. Fitzpatrick, 31 N. Y. S. 1048; Lynch v. Richardson, 163 Mass. 160, 39 N. E. 801, 47 A. S. R. 444; Perrotta v. Picciano, *supra;* Staton v. Mfg. Co., 52 Utah 426, 174 Pac..821.)

Appellee testified that at the time of the accident he was about 21 years of age, limited in experience with horses, and with none in connection with stallions; that he started to work for appellant at ordinary farm work in April, 1917, and was directed to care for the stallion at various times, commencing about June 1st, prior to the accident; that he noticed the "nipping" above mentioned, as well as the conduct of the animal on June 10th, including the attack on him while he was on a horse; that he was not warned of the viciousness of the stallion; that on the contrary, he was told that the animal was gentle; that appellant explained the attack on June 10th by stating that the stallion would fight another horse, but if approached on foot, would be safe; that he relied on the statements and assurances given by appellant, and that he, himself, was not sufficiently experienced to know or appreciate the meaning of the actions of

the stallion up to that time. This evidence warranted the jury in finding the appellant was negligent, and liable for the injuries received by appellee, unless the latter assumed the risk or was guilty of contributory negligence.

In discussing the question of assumption of risk, it is advisable in view of the wilderness of cases on the subject, that we first draw some distinctions, which, for practical reasons ought often to be drawn. As far as possible, we shall cite only authorities treating of vicious animals, but inasmuch as we have found no case of that character dealing extensively with distinctions as to the various risks, we shall to some extent cite authorities dealing with the general subject involving the relation of master and servant. While the various kinds of risks often shade one into the other, we may state generally that a servant assumes (1) such dangers as are ordinarily and normally incident to his occupation, and a workman of mature years is presumed to know them, whether he does or not; (2) such extraordinary or abnormal risks which he (a) knows and appreciates and faces without complaint, or which (b) are obvious or apparent. (Dutrey Admx. v. Ry. Co., 265 Pa. St. 215; Streeter v. Scraper Co., 254 Ill. 244, 98 N. E. 541; Ry Co. v. Simmons, 24 Ga. App. 96, 100 S. E. 5; Bailey, Personal Injuries (2nd Ed.) §§ 355, 356), and numerous other cases. The master is prima facie bound to give warning of all abnormal or extraordinary risks (Labatt, M. & Serv. 2nd Ed., § 1146), but not ordinarily of obvious risks (Bailey, *supra*, § 299 a; Labatt, *supra*, § 1144; Carney Coal Co. v. Benedict, 22 Wyo. 362, 369); nor generally, of ordinary risks, unless secret dangers exist of which he has knowledge and the servant has not. (Labatt, *supra*, § 1145.)

What kind of a risk was the one in the case at bar? Ordinary risks, constituting the first class, are those existing after the master has done everything that he is bound to do for the purpose of securing the safety of his servants. The assumption of this class of risks is predicated, as it were, on the absence of negligence of the master, and to say that such

risks are assumed by the servant is but another way of stating that the master is not negligent. Hence some of the courts treat the principle of assumption of risk as applicable only to extraordinary risks, caused by the negligence of the master. (Labatt, *supra.*, § 1186 a; Bailey, *supra.*, § 369; Bria v. Westinghouse, 117 N. Y. S. 195; Duffey v. Cons. B. C. Co., 147 Ia. 225, 124 N. W. 609; Belevicze v. Platt Bros. & Co., 84 Conn. 632, 81 Atl. 339; Worden v. Gare-Manan Co., 83 Conn. 642, 78 Atl. 422.) And, though sometimes spoken of as having assumed the. risk, it was really because of the absence of negligence on the part of the master that the plaintiff was held not entitled to recover in the following cases, to some of which our attention has been directed, involving the question of injuries from vicious animals. (Smith v. Lumber Co., 22 Idaho 782, 128 Pac. 546; McFadden v. Standard Oil Company, 148 N. Y. S. 957; Haneman v. Western Meat Co., 8 Cal. App. 698, 97 Pac. 695; Eastman v. Scott, 182 Mass. 192, 64 N. E. 968; Arkansas Smokeless Coal Co. v. Peppin, 92 Ark. 138, 122 S. W. 113; 19 Ann. Cas. 861; Missouri Valley Bridge & Iron Co. v. Ballard, 53 Tex. Civ. App. 116, 116 S. W. 93; Hosmer v. Carney, *supra,* (partially).) What are ordinary risks may sometimes be difficult to determine, just as it may be hard, at times, to determine what constitutes negligence. The question of danger is not necessarily a criterion. A servant may be employed as a tamer of wild animals, or as a repairer of dangerous machinery. In such and similar cases, of course, the risk is, nevertheless, an ordinary risk; the master is not negligent, and, therefore, not liable to damages for injuries sustained. It is on this principle that Borman v. City of Milwaukee, 93 Wis. 522; 67 N. W. 924, 33 L. R. A. 657, cited by appellant, was determined, and that seems to be true also in the case of St. Louis Nat. Stock Yards, 116 Ill. App. 107. But no such principle can apply in the case at bar. Here the appellee was not employed for the specific purpose of attending a vicious animal, but an animal supposedly gentle, and which appel-

lant still insists was gentle.  To keep a vicious animal, known to be such, actually or constructively, is, on principle, the same as the keeping of a defective appliance, unsafe place to work, or an incompetent servant, and to give such animal into the charge of an employee is, prima facie, negligence, and places the risk therefrom outside the pale of ordinary dangers.  Such a risk is extraordinary, and is not assumed except under the limitations mentioned.  To relieve the master from liability for injuries sustained by the servant in consequence thereof, it is necessary that it appear that the employee was fully warned, or that without warning he knew, or should have known, and appreciated the danger; nor, it is clear, can a servant, employed for the purpose of caring for, or working with, animals, be, as a matter of law, presumed to know that they are vicious.  (Anderson v. Anderson, 41 S. D. 32, 168 N. W. 852; Brown v. Green & Son, 1 Penniwell 535, 42 Atl. 991; Gooding v. Chutes, 155 Cal. 62, 23 L. R. A. (N. S.) 671; Talmage v. Mills, 80 N. Y. S. 637; Geo. H. Hammond Co. v. Johnson, 38 Nebr. 244, 56 N. W. 967; Leigh v. Omaha St. Ry. Co., 36 Nebr. 131, 54 N. W. 134; Wilson v. Sioux Cons. Min. Co., 16 Utah 392, 52 Pac. 626; Stutzke v. Consumers Ice & Fuel Co., 156 Mo. App. 1, 136 S. W. 243; Ferarira v. Silvey, 38 Cal. App. 346, 176 Pac. 371; Gatliff Coal Co. v. Wright, 157 Ky. 682, 163 S. W. 1110; Nooney v. Pac. Express Co., 208 Fed. 274; Miller v. Coal Co., 239 Ill. 626; 88 N. E. 196; Turner v. Ry. Co., 121 Va. 194, 92 S. E. 841, 26 Cyc. 1113; Labatt, *supra,* § 1334, note 1, ee, and see cases collated in 19 Am. & Engl. Ann. Cas. 863, L. R. A. 1915 B, 433, and 3 L. R. A. (N. S.) 209.)  These principles were substantially applied in McGarry v. New York & H. R. Co., 18 N. Y. S. 195, and Helmke v. Stettler, 23 N. Y. S. 392, where the employee was a groom attending the animal.

Having determined then that the risk in the case at bar was an extraordinary risk, could the court say, under the evidence of this case, that the plaintiff was barred as a matter of law?  Let us first state the general principles appli-

cable. When it appears to be clear that the servant had knowledge of, and appreciated the danger, or that the danger was so obvious or apparent that knowledge should be imputed to him, then the court may declare as a matter of law that the servant is not entitled to recover, as was done in the following cases involving the question of injuries from vicious animals, some of which are cited by appellant; (Armington v. Ice Co., 33 R. I. 484, 82 Atl. 263; Milby & Dow Coal & Min. Co. v. Balla, 7 Ind. Terr. 629, 104 S. W. 860, 18 L. R. A. (N. S.) 695; Hoover v. Empire Coal Co., 149 Ill. App. 258; Green & Coates St. Ry. Co. v. Bresmer, 97 Pa. St. 103; McGovern v. Fitzpatrick, 131 N. Y. S. 1048; Clark v. M. K. & T. Ry. Co., 179 Mo. 66; 77 S. W. 882; Wooster v. Bliss, 35 N. Y. S. 518; Shaw v. Deal, 7 Pa. Co. Ct. 378; Bessemer Land & Imp. Co., 125 Ala. 442; Arthur v. Storage Co., 173 Cal. 646, 161 Pac. 121; Althart v. Cons. Coal Co., 165 Ill. App. 504.) If, on the other hand, there is a conflict in the evidence, or different inferences may be drawn therefrom, the question of knowledge is for the jury. (Turner v. Ry. Co., *supra;* Escher Min. R. & Min. Co., 28 Pa. Super. Ct., 307; Fererira v. Silvey, *supra;* Manufacturers Fuel Co. v. White, 130 Ill. App. 29.) None of the cases cited above, where the court declared the plaintiff barred as a matter of law, present facts like those in this case; the Balla case is the nearest to it, but is distinguishable. There the servant had a previous accident almost identical with that which resulted in his injury; he thereby acquired better knowledge and appreciation of the danger than was possessed by the master; nor was the servant in that case misled by suggestions and statements to use or approach the animal in a different manner, as was done in the case at bar. Did the plaintiff in this case know and appreciate the danger? The element of appreciation is not argued by counsel for appellant. But the law is well settled that assumption of risk is not predicable from knowledge of the conditions alone; it must further appear that the danger was or should have been appreciated, in order that it may be said that there

was an intelligent and deliberate consent which is one of the essential elements involved in the conception of an assumption of risk. (Labatt, *supra,* § 1120; 26 Cys. 1199.) And while that appreciation is often inferred from possession of complete knowledge, yet, if that knowledge is imperfect, and excusably so, the servant's action for injuries received will not be barred. (Labatt, *supra,* § 1375.) The statement, therefore, made to plaintiff, that if he approached the stallion on foot, he would be safe, becomes of vital importance in this case but counsel for appellant have entirely ignored it in their argument. That statement, clearly, had a tendency to negative perfect knowledge, and therefore appreciation of the danger, and had a tendency to mislead the plaintiff. The master ordinarily has superior knowledge of the facts and conditions surrounding the work. (Labatt, *supra,* § 1378) and hence a servant has a right to rely on the representations and assurances of the former as to the absence of danger, and if he is lulled into sucurity by the master, he may recover for injuries received, unless the danger is so open and apparent, that, notwithstanding such representations and assurances, he should not, as a reasonably prudent person, have incurred it, and in such case it is ordinarily for the jury to determine the facts. (2 Cyc. 1185, 1213, 1235; Walters v. Sievers, 107 Wash. 221, 181 Pac. 853; Gatliff Coal Co. v. Wright, *supra;* East Jellico Coal Co. v. Stewart, 24 Ky. L. 420; 68 S. W. 624; Moore v. Express Co., 186 Mo. App. 593; 172 S. W. 416; Thornton v. Layle, 33 Ky. L. 382, 111 S. W. 279, 17 L. R. A. (N. S.) 1233.) The mere fact that, as perhaps was true in this case, the apprehension of a servant as to the possibility of injury was excited, will not, in the face of assurances of safety given by the master, render the employee chargeable, as a matter of law, either with an assumption of risk or with contributory negligence. (Labatt, *supra,* § 1373; Wolfe v. Griner, 67 Ind. App. 698, 119 N. E. 839.) In the case of Fererira v. Silvey, *supra,* the court said: "The plaintiff had a right to assume that Silvey's repeated assurances of the gentleness

of the mule and the team were well founded and true, notwithstanding that the actions of the mule coming under his observation might have generated in his mind some suspicion that the animal was not so gentle and tractable as not to require vigilant watching and handling when being used in the usual employment of the ranch.'' In Moore v. Express Co., *supra,* the statement: ''Go on and take care of the horse in the stall; all you have to do to be careful, you won't be hurt,'' was held to exempt plaintiff from an assumption of risk, although he knew of the disposition of the animal and that it sometimes kicked. In East Jellico Coal Co. v. Stewart, *supra,* plaintiff had been warned of the viciousness of the mule by several men, but the boss had told him that it was safe, and the question of his knowledge of the danger was held to be for the jury. In the case of Gatliff Coal Co. v. Wright, *supra,* the plaintiff was injured by reason of a mule running away. It had attempted to run away with him before, but he was told by the foreman that it was safe, and the court held that the case was properly submitted to the jury. In the case of Wilson v. Sioux Cons. Min. Co., *supra,* the court held that to inform a servant that a horse is ''high-lived'' is not a compliance with the duty of the master to inform his servant, saying that to give only such partial information ''was more likely to mislead the respondent, and lull him into a sense of security from vicious habits than warn him of the danger which actually existed. Under such circumstances the court would not be justified in holding that the respondent assumed the risk of injury.'' In Kissam v. Jones, 10 N. Y. S. 94, a bailee was told that the horse was a little ''skeery,'' that he should look out, but that if he kept a taut rein, there would be no danger. The horse ran away, upsetting the buggy and injuring plaintiff seriously. The court said:

''It was the duty of defendant, also, to inform the plaintiff fully of the vicious propensities of the horse, and he is legally liable for the damages which resulted to the plaintiff in consequence of his failure to impart to him such informa-

tion. It is easy to see that the suspicions of the plaintiff were allayed, instead of excited, by what the defendant told him, and by what the servants of the defendant told him at the stable. He could only infer from the language used to him that the horse was a little flighty, or might shy, but that, if he used proper care and caution in the use of the animal, and held upon him a taut rein, there was no danger. The information should have extended further, and the plaintiff should have been fully informed of the particularly dangerous habit of the horse, before it can be claimed that he assumed any risk.'' We must accordingly hold that the issue on the question as to whether plaintiff knew and appreciated the danger was properly left to the jury.

The question of obvious risks was fully discussed in Carney Coal Co. v. Benedict, *supra,* where this court, speaking through Chief Justice Potter, held that ''a court is not authorized to say as a matter of law that the danger was obvious unless it is shown by the evidence without conflict that an ordinarily prudent man or one with the experience of the injured servant ought to have noticed it.'' That holding is fully sustained by the authorities. See an exhaustive opinion on the subject in Rase v. Ry. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138. Obvious risks are distinct from known and appreciated risks, though both belong to the class called extraordinary; the latter is based on actual, the former on imputed, knowledge. There is no evidence in this case from which we could say, as a matter of law, that the danger was apparent. Courts will not declare that mules are judicially known as vicious, neither can we do so as to stallions. Some, no doubt, are more tractable than others, and we cannot know judicially that the partial information, received by plaintiff, according to his testimony, when he was on a horse, should have convinced the plaintiff that he would be bitten and lacerated when approaching the stallion on foot. The jury, taken from all walks of life, were probably better fitted to pass judgment upon that than the court, and the question was properly left

to them.    (Esher v. Mineral R. & Min. Co., 28 Pa. Super. Ct. 387.)

What we have said also disposes of the question of contributory negligence.   If plaintiff did not know and appreciate the danger, he could not be guilty of negligence in approaching the stallion at the time of his injuries, unless he was negligent in the act of approaching and handling the stallion at that time, of which there is no evidence.   The question of contributory negligence, therefore, was rightly left to the jury.   (Escher v. Mineral R. & M. Co., *supra.*  Anderson v. Anderson, *supra;* Lampe v. St. Louis Brewing Ass'n. (Mo.) 221 S. W. 447.)

The judgment herein accordingly should be affirmed, and it is so ordered.

*Affirmed.*

POTTER, C. J. and TIDBALL, District Judge, concur.