TENNESSEE RIVER, ETC., CO. *v.* LEEDS.

(*Knoxville.* November 11, 1896.)

1. SALE. *Implied warranty by manufacturer against latent defects.*

In the sale by a manufacturer of machinery for a special purpose, there is an implied warranty that covers latent defects that would render it unfit for that purpose, although they could not have been discovered by proper tests. (*Post, pp. 575, 576.*)

Cases cited and approved: Overton *v.* Phelan, 2 Head, 445; 110 U. S., 108; 78 Am. Dec., 163; 24 Am. Rep., 102.

2. SAME. *Same. Case in judgment.*

The manufacturer of a casting in which blow holes are unavoidable, impliedly warrants that they will not be unusual or avoidable by the exercise of necessary care and skill in its manufacture to make it reasonably fit and proper for use, and he is not relieved, as a matter of law, from liability even though such blow holes might not be discoverable, after the manufacture, by any inspection short of destroying the cast. (*Post, pp. 576– 578.*)

---

FROM HAMILTON.

---

Appeal in error from Circuit Court of Hamilton County. JOHN A. MOON, J.

SHEPHERD & FRIERSON for Tennessee River Co.

J. B. FRAZIER for Leeds.

SNODGRASS, Ch. J.   The plaintiff in error ordered a cast-iron piston head of Leeds & Co., manufacturers, at New Orleans, for use in a sixty-inch Tyler press which the Tennessee River Co. was using in Chattanooga, to replace one which it had just broken. Leeds & Co. had made the one which broke, and plaintiff in error ordered the second of them from the same pattern, with direction to be made good and strong.   The casting was done, and was apparently perfect.   It was forwarded to plaintiff in error, and was received and used by it for two or three months, when it broke in two as the other had done.   When Leeds & Co. sued on the note given for this casting, defendant contested liability on account of failure of consideration and breach of implied warranty.   There was a trial before jury, verdict and judgment for plaintiff for the amount of the note, and defendant appealed in error.   The only error assigned is to the charge of the Court as to the manufacturer's liability on implied warranty.   It is as follows: "The manufacturer warranted, impliedly, that the casting was suitable for the purpose for which it was designed, ordered, and manufactured, and that if the casting or piston head was constructed on the plan or design proper for the purpose for which it was intended, and if made of the proper material and cast in the proper manner, and if the manufacturer had taken all precautions known to have the piston head properly made, and if it was of the proper dimensions, and if no defect could be ascer-

tained or found in the same after a close inspection, using the most approved tests for that purpose, that then the manufacturer would not be liable for a latent defect inside of the casting which could not be found by any inspection short of breaking and destroying the casting.''

This charge is erroneous. It assumes the non-liability of a manufacturer for latent defects, if proper tests had been applied to the discovery of such defects by him, and they had not been found. This is the rule when applied to the purchaser of machinery who is sued by persons injured in its use, but is not the rule as applied to the manufacturer who makes and sells to a purchaser machinery for a special purpose. In that case the manufacturer warrants against latent defects that the machinery is reasonably fit for the use to which it is to be applied. He does not warrant (in the absence of express contract) that it is perfect, or the best for that purpose, but only that it is reasonbly fit and proper for the use designed. *Overton* v. *Phelan*, 2 Head, 445; *Kellogg Bridge Co.* v. *Thos. H. Hamilton*, 110 U. S. Sup. Ct. Rep., 108 (Law. Co-op. Ed., Book 28, p. 86); *Hoe* v. *Sanborn*, 78 Am. Dec., 163 (21 N. Y., 552); *Bragg* v. *Morrill*, 24 Am. Rep., 102 (40 Vt., 45).

On the merits of this case it was a matter of serious controversy whether defendant had not done all that was required of it under this rule. The

casting ordered appeared to be perfect. The only defect (discovered after it broke) was that there were certain blow holes inside of it, which could not be discovered by outside observation or test. It appeared in proof that it is impossible to make a casting without blow holes, but there was evidence indicating that these were of unusual size, and that this casting was exceptionally defective. In the latter case the defendant might be liable, which it certainly would not be if only such blow holes existed as were or might be the natural result of the process of manufacture from good material in the usual way. If one orders a casting which cannot be made without blow holes, there is no warranty implied that he will receive one without blow holes, but there is a warranty that he may not expect any more or larger blow holes than is usual in the process of manufacture designed to supply such articles fit and proper for use. It does not clearly appear that, even granting the blow holes in this machinery were unusual, the breaking was thereby occasioned, but enough appears to require that this question be submitted to the jury on a correct charge along with the other questions involved, and especially with that already indicated, that in making an order for a casting, in which blow holes were unavoidable, there was no warranty that a purchaser would receive one without blow holes, but only that such blow holes would not be unusual or avoidable by the exercise of necessary

13 P—37

care and skill in the manufacture, to make the machine reasonably fit and proper for use by eliminating them if practicable, according to the usual approved method of casting such machinery.

The judgment will therefore be reversed and the case remanded for a new trial.