## LAKE SUPERIOR LOADER COMPANY v. HUTTIG LEAD & ZINC COMPANY, Appellant.

### Division One, July 31, 1924.

1. **EVIDENCE: Suit for Contract Price of Machinery Sold: Adaptability of Like Machinery to Other Mines.** The general rule is that evidence of independent events or occurrences not directly connected with the matter in dispute is ordinarily to be excluded; but there is an exception which, in a proper case, lets in evidence of the tendency, capacity or quality of a material object by proof of its operation under conditions essentially similar to those surrounding the particular operation in controversy. But in order for the exception to become applicable it is necessary for the party who seeks to apply it to assume the burden of showing the substantial similarity of the essential conditions of operation. And

the trial court is vested with a discretion in ruling upon the offered testimony which is not to be lightly overruled. Where the similarity is not proven, the evidence respécting the operation of other like machines is not relevant. Nor does respondent open the way for its admission by offering kindred evidence for another purpose.

2. ———: ———: **Opinion.** In a suit for the contract price of mining shovels sold, where the defense is that the machines were warranted to do certain work, but were incapable of doing the work, it is not error to exclude the opinion of a hand shoveler, who has no knowledge of machinery in general, or of such shovels, that the machines were practical and adaptable to do the work in the district where the mine is and that it did the work.

3. ———: ———: **Other Sales.** In a suit for the purchase price of three mining shovels shipped to the same district in a car with five others, where the defense is that they were sold under an implied warranty, the fact that the salesman has sold no others in the district would alone have no appreciable tendency to prove that the three would not satisfactorily do the work they were represented as being capable of doing.

4. ———: ———: **Price of Ore: Conclusion.** The statement of a witness that there had been a decline in the price of ore at a certain date, followed by his giving specific prices showing the rise and fall in detail, if based on his own knowledge, even though he refreshed his memory from a memorandum, was not a conclusion.

5. **INSTRUCTION: Adapted to Facts: Installation of Machinery: Tests: Reasonably Fit.** In a suit for the contract price of mining shovels sold, where the defense is that they were sold on an implied warranty that they were suitable and capable of loading a certain amount of ore and earth into cans every eight hours and a breach of said warranty, and where a major issue is whether the purchaser had tried the machines in good faith or whether the apparent tests were conceived and made in an effort to construct a defense to the action, an instruction for the vendor which is adapted to the facts and situation is not erroneous—for instance, it is not erroneous if it requires the jury to find that the shovels were "reasonably fit and adapted, when properly installed, with the reasonable necessary accompanying equipment, for loading material from the mine into receptacles to be taken out of the mine."

6. ———: **Implied Warranty: Absolute Perfection.** In an action for the contract price of mine shovels sold, where the defense is that they were bought upon an implied warranty of capacity, adaptability and suitability for loading a designated amount of material into cans, an instruction for the plaintiff that "by implied warranty

Lake Superior Loader Co. v. Huttig Lead & Zinc Co.

is meant that the shovels were reasonably fit for and adapted to load material from the mine into receptacles, and absolute perfection is not implied," does not warrant an apprehension that the jury would by it be led to overlook or excuse substantial defects, and is not erroneous.

7. ————: Assumption of Fact: Interest from Demand after It Became Due. An instruction which tells the jury that "if you find for plaintiff for the purchase price of the three shovels, you may add interest from the date of demand by plaintiff, after it became due," does not assume that the purchase price is due, but conditions interest on a finding that it is due.

8. ————: Implied Warranty: Misrepresentations: Made as True Without Knowledge of Truth. In a suit for the contract price of mine shovels sold, where the defense is a breach of an implied warranty and false representations, an instruction that "misrepresentations of fact constituting fraud must be statements which plaintiff knew to be false, or had reasonable cause to believe were untrue" and "statements of opinion, if believed to be true by the person making them, and based upon reasonably reliable information and belief, do not constitute fraudulent representations" is not erroneous as omitting that species of fraud which consists of material representations made as true without knowledge of whether they are true or false, where the defense was the breach of an implied warranty and specific false representations, and all the evidence that tended to prove the false representations also tended to prove the breach of the implied warranty, and the jury found there had been no breach of the implied warranty, and thereby necessarily found that there had been no false representations.

Headnotes 1, 2 and 4: Evidence: 1, 22 C. J. pars. 839, 840; 2, 22 C. J. par. 757; 4, 22 C. J. par. 588. Headnotes 3 and 5 to 8: Sales: 3, 35 Cyc. 460 (1926 Anno); 5, 6 and 8, 35 Cyc. 484; 7, 35 Cyc. 577.

Appeal from Jackson Circuit Court.—*Hon. Samuel A. Dew*, Judge.

AFFIRMED.

*Cooper, Neel & Wright* for appellant.

(1) The court erred in sustaining the objections of plaintiff's counsel to questions propounded to the witnesses Brown, Dyke and Douse, in reference to shovels of

the same identical model made by the plaintiff company, shipped in the same car, at the same time, with the three machines involved in this case, sold to the same sort of mining companies as the defendant, in the same territory, and sought to be worked and used in similar ground—not being adapted or adaptable to the kind of mining done in said Joplin-Picher district. 1 Jones's Commentaries on Law and Evidence, pp. 661, 682, 885; Hawkins v. Railroad Co., 182 Mo. App. 331; Cox v. Polk, 139 Mo. App. 260; Aetna Ins. Co. v. Railroad Co., 123 Mo. App. 513; Stevenson v. Gunnings Estate, 64 Vt. 601; Siser v. Shaffer, 43 W. Va. 769; McElheny v. Pittsburg Ry. Co., 147 Pa. 1; Perrin v. United Statrs, 169 Fed. 27; Hayes v. Met. Street Ry. Co., 182 Mo. App. 400; Hales v. Raines, 162 Mo. App. 62; Gourley v. Callahan, 190 Mo. App. 670; Crawford v. Stock Yards Co., 215 Mo. 394; Powell v. Frisco Ry. Co., 229 Mo. 246, 273. Where a party voluntarily offers testimony, although not necessarily relevant to the issues, it is too late for him to object to rebuttal testimony offered by his adversary upon the same subject, and such testimony should be received. Pollock v. Gunter, 162 Ala. 320; Kuhn v. Eppstein, 239 Ill. 555; Bowen v. Eaton, 46 Ind. App. 65; Brown v. Perkins, 1 Allen (Mass.) 89, 96; Scattergood v. Wood, 79 N. Y. 263; Sherfey v. Evansville Ry. Co., 121 Ind. 427; Spalding v. Ry. Co., 98 Iowa, 205; McIntire v. White, 124 Ala. 177. (2) The court erred in giving plaintiff's Instruction 10. Bond v. Ry. Co., 122 Mo. App. 207; Klamp v. Rodewalli, 19 Mo. 450; Coleman v. Roberts, 1 Mo. 101; Black River Co. v. Warner, 93 Mo. 374, 384; Armstrong v. Ry. Co., 62 Mo. App. 645.

*Charles M. Miller* for respondent.

(1) The trial court properly limited the evidence of the operation of the shoveloader to defendant's mine. (a) Because the elements and factors that enter into the successful or unsuccessful operation of the shoveloader vary greatly, according to the mine conditions. (b) Be-

cause defendant did not offer any evidence to convince the trial court that the conditions in other mines were the same as in defendant's mine, and, on the contrary, the evidence showed otherwise.   (c)   Because the exclusion of references to the operation of the shoveloader in other mines was within the judicial discretion of the trial court, and is only reviewable where the discretion has been abused.   (d)   Defendant is in no position on the record to successfully complain of the ruling of the trial court in excluding references of the operation of the shoveloader in other mines.   Osborne v. Eyster, 195 Mo. App. 520; Craver v. Hornburg, 26 Kan. 94; Jewell Filter Co. v. Kirk, 200 Ill. 382.   (2)   Instruction 10 is not subject to the criticism urged by defendant, which at most is hypercritical.   Thresher Co. v. Briggs, 202 Mo. App. 603. (3)   The trial court did not err in giving plaintiff's instruction No. 13, relating to the burden of proof upon the alleged evidence of fraud, and advising the jury about misrepresentations and statements of opinion.   Bank v. Hutton, 224 Mo. 42, 70; Peters v. Lohman, 171 Mo. App. 465, 484; Peoples National Bank v. Central Trust Co., 179 Mo. 629, 663; Davidson v. Hobson, 59 Mo. App. 130; Anstee v. Ober, 26 Mo. App. 665, 669; Nichols v. Stevens, 123 Mo. 96, 117; Brown v. Mining Co., 194 Mo. 681, 699; Moody v. Baxter, 167 Mo. App. 521; Bank v. Brisch, 140 Mo. App. 246, 250.   (4)   The trial court did not err in the admission of testimony as to witness Talboys, relating to the price of zinc ore at the times in question.   McCrary v. Railroad, 109 Mo. App. 567, 571.

JAMES T. BLAIR, P. J.—Respondent instituted this action and recovered judgment for the contract price of three Armstrong shovels, Model No. 11, freight thereon, certain spare parts, and for interest.

The second amended answer first admits the signing of the contract and denies all other allegations, and then avers that appellant's signature to the contract was induced by false representations made by appellant's sales-

man concerning the suitability of the shovels for the work
in appellant's mine and their capacity for loading earth,
rock and ore into cans wherein these were removed from
the mine; that respondent represented that the "shovels
were adapted to the character of the ground, dirt and ore
in defendant's mine, and that said shovels would load
from 200 to 225 cans of dirt in eight hours, and that said
shovels would operate successfully and economically, and
and that they were practical and would operate without
interruption, and that plaintiff would and did guarantee
that said shovels would do this work for defendant com-
pany;" that appellant relied on these representations,
was induced thereby to sign the contract, and that the
representations were false.   The particulars in which the
shovels fell below the representations are then averred.
Another averment is that appellant, with respondent's
knowledge, was buying the shovels for specific work in
its mine and for the work in character and quality
which it had been averred respondent represented the
shovels to have capacity and fitness to do, and that re-
spondent "both expressly and impliedly warranted that
its shovels were adapted to handle ore in defendant's
mine, and that said shovels would load from 200 to 225
cans of dirt in eight-hours and do so economically and
consecutively," and that "said shovels wholly failed to
meet such requirements and did not come up to said war-
ranties at all;" that there was total failure of consider-
ation; that the shovels are without value to appellant and
had been tendered back to respondent.   The reply is a
general denial.

　　Respondent offered the contract, proved the delivery
of the described shovels to appellant, and appellant's re-
fusal to pay.   Appellant offered evidence which tended
to prove the averments of the answer with respect to the
warranty of suitability for the work and that of operative
condition.  Only one machine was put in operation.  There
was evidence of frequent troubles in getting this machine
to work at all, and evidence that when it could be made

to operate mechanically it demonstrated its unsuitability for the work of loading cans with sufficient speed and continuity to comply with the warranty pleaded or so that the operation was economically feasible. Respondent then offered evidence which tended to show that appellant did not give the shovel a fair trial in good faith; that the price of ore dropped between the date of the contract and the receipt by appellant of the machine, and that hand shovelers became more plentiful and less expensive; that appellant did not furnish a sufficiently heavy track, except for one of 16-foot length; that only one track was provided upon which the shovel could work, whereas others were necessary unless the shovel was to stand idle, after it cleaned up along the face beside which the track ran, until holes were drilled and more rock shot down, and this process required an hour or more on each occasion; that cans were not furnished at times because the hand shovelers who were working took them and thus exhausted the available supply and left the shovel idle for that reason, and at others the mill was shut down and loading had to be stopped for that reason; that with the mill running and sufficient cans at hand, tracks and appliances as described in the contract, a shovel would load more than 225 cans in an eight-hour shift, and this shovel did load at a greater *rate* of speed; that after the stiffness of the new machine wore off and minor adjustments were made, as generally required with new machinery, the shovel in use worked without mechanical trouble and was suitable for the work in appellant's mine. But one shovel was uncrated and tried. The evidence occupies about 600 pages.

It was shown that prior to appellant's purchase of the shovels one had been installed in the Montreal mine, and appellant's president and superintendent had gone to the Montreal mine to inspect it. They say the shovel was not in operation when they were there. There is evidence the superintendent had said he and the president had investigated the shovel in operation in the Montreal

mine and there was no question about its ability to load, but that the problem was to keep enough broken dirt ahead of the machine and secure good can service and that he would attend to that.

With respect to the comparative conditions in the mines in the district, appellant's then superintendent testified:

"Q.   What was your object in going over to the Montreal mine?   A.   Mr. Victor said he had one in operation over there.

"Q.   Why did you want to see one over there?   A. I wanted to see it work.

"Q.   Well, you were going to buy one, or thought you were, and you wanted to see the machine and see it work, didn't you?   That was the purpose in going over there?   A.   Yes, sir.

"Q.   Now about how far from the Montreal mine in miles is the Huttig Lead & Zinc Mine Number 1?   A. Oh, about two or three miles.

"Q.   It was the same mining field at that time?   A. Oh, yes.

"Q.   And they had about the same conditions there in that mine that you had in your mine, didn't they?   A. In what respect?

"Q.   Well, in the method of mining dirt and things of that kind, the structure of the mine?   A.   Well, there is some slight difference in other mines in that district.

"Q.   But they all encounter about the same mining difficulties, don't they, with respect to strata and structure of earth?   A.   No, sir.

"Q.   You say there is some slight difference?   What is the difference?   A.   Well, the formation is different for one thing.   Some mines have no rough—what we call a cap rock; some mines produce more boulders than others.   Some mines produce more lead and jack than others.   Some mines have narrower drifts than others.

"Q.   What other differences?   A.   Some mines have more water than others, too.

"Q.   Now, take your mine in comparison with the Montreal mine with respect to boulders and structure of that kind.  How do they compare?   A.  . I never made an investigation of the Montreal mine, so I couldn't say.

"Q.   But generally the conditions are about the same, are they not?   A.   No, I can't say that.

"Q.   Well, you used the word there, there was some slight difference.  I take it by that you mean there is not any great difference?   A.   Some of them are; yes, sir."

There was no offer to show like conditions in other mines with respect to the "layout" of tracks for the use of the installed shovel, or to show that the tracks available complied in character with the requirements essential to successful operation as prescribed, nor that the can service was adequate to keep the shovel supplied with that sort of equipment, which was obviously necessary for continuous operation.  There was no offer to show that the operators in other mines knew anything about handling machines of the kind or any other kind.  In fact, the evidence tends to prove the operators had no such experience with like machines.  There was no offer to show that the physical conditions were essentially the same in other mines; and, in connection with offers to prove that some, at least, of the shovels were not in operation at stated times, there was no evidence or offer to show that the mines themselves were in operation at such times.  In most instances in which offers respecting like shovels in other mines were made, the question was asked, an objection sustained, and an exception saved, without more. The trial court stated and re-stated its opinion well in accord with the authorities, subsequently to be cited, but this did not evoke evidence or offers of evidence tending to prove the similarity of essential conditions.  The record shows several instances which seem to indicate that appellant was accepting the court's ruling, but the case will not be determined on that view.

With respect to the point that respondent offered evidence respecting other mines and that appellant was

Lake Superior Loader Co. v. Huttig Lead & Zinc Co.

entitled to meet this, it appears that it was shown that the three machines appellant bought were shipped in a carload of eight or ten machines of the same model, of which the others had been sold to other mines in the district and all were delivered about the same time. Respondent also put in evidence pictures of like machines for the purpose of illustrating the several cycles of operation in its effort to show the jury the mechanics of the shovels and the several motions which it was capable of making. The evidence which showed where the pictures were taken was brought out by appellant.

The contract contained, among other things, a provision to the effect that it "expresses the whole agreement between the parties hereto and all previous negotiations and understandings are merged herein," and contained an express guaranty as to the character and amount of work. Appellant's president testified respondent's salesman told him the contract was an old form and that the respondent would make good the oral warranty which appellant contends was made.

Appellant assigns "that the court erred (1) in sustaining objections" to questions propounded to named witnesses respecting other machines like those for the price of which this action was brought; (2) in excluding the opinion of Douse upon the question whether the machines were "practical and adaptable for use in the Joplin district;" (3) in excluding an answer to the question to Tallboys concerning the date "when the last machine was sold by" respondent in the Joplin district; and (4) in permitting Tallboys to testify as to the continuance in the decline in ore prices after a named date; and (5) certain rulings in giving and refusing instructions.

I. Appellant contends that it offered and the court erred in excluding evidence respecting shovels of the same model sold to mining companies like appellant in the same territory and "sought to be used in similar ground—not being

Operation in Other Mines.

adapted or adaptable to the kind of mining done in said Joplin-Picher district.''

Upon this point the questions are whether (1) the evidence offered was relevant; (2) if relevant, whether, in all the circumstances, the trial court abused its discretion in excluding the evidence; and, in this case, there seems to be another question—i. e.,one pertaining to the sufficiency of the record to support this assignment.

There is no dispute about the general rule which ordinarily excludes evidence of independent events and occurrences which are not directly connected with the matter in dispute; nor concerning the exception to this general rule, which exception, in a proper case, lets in evidence of the ''tendency, capacity ɔr quality of a material object'' by proof of its operation under conditions essentially similar to those surrounding the particular operation in controversy, and, in proper circumstances, permits evidence of the operation of like objects or machinery under like conditions. Nor is there any controversy that in order for the exception to the rule to become applicable it is necessary for the party who seeks to apply it to assume the burden of showing to the court the substantial similarity of the essential conditions of operation. This is the condition precedent to the relevance of such evidence. [11 Ency. Ev. pp. 810, 812, 821; 22 C. J. 750 et seq.; 1 Wigmore on Ev. sec. 441 et seq.; 1 Greenleaf on Ev. (16 Ed.) sec. 14v et seq.] Nor can it be denied that in respect of a ruling on offered evidence of this kind the trial court is vested with a discretion which will not lightly be overruled. These principles are all recognized and applied in this State. [Osborne v. Eyster, 195 Mo. App. 1. c. 525; Riggs v. Railroad, 216 Mo. 1. c. 327 et seq.; Horr v. Railway, 156 Mo. App. 1. c. 654; Charlton v. Railway, 200 Mo. 1. c. 439, 440; Graney v. Railway, 140 Mo. 1. c. 103; State v. Bass, 251 Mo. 1. c. 120 et seq.; Holzemer v. Railway, 261 Mo. 1. c. 410, 411; Burton v. Railroad, 176 Mo. App. 1. c. 20; Wells v. Lusk, 188 Mo. App. 1. c. 68; Owens v. Delano, 194 S. W. 1. c. 760; Griggs v. Dunham, 204 S. W. 1. c. 574.]

In this case the substantial similarity in essential conditions under which machines in other mines operated was neither shown nor offered, as a reference to the facts will show. In truth, the dissimilarity was proved. The evidence respecting the operation of such other like machines was consequently not relevant. In addition, in any event, the trial court was vested with a discretion which cannot be said to be shown to have been arbitrarily exercised in its ruling. The suggestion that respondent opened the way for evidence respecting the operation of other like machines in other mines is met by the fact that respondent offered no such evidence in the case in the sense contended for. The pictures offered were for another purpose than to show either the mechanical operative character of the particular machines or their suitability for work in mines in the Joplin-Picher district. The naming of the places where the pictures were taken was brought out by appellant. It also evoked the testimony as to the number and distribution of respondent's output. Without regard to that fact the evidence of respondent did not, with respect to other machines, go into facts relevant to the warranties averred to have been breached. The evidence concerning the machine in the Montreal mine was offered to show that appellant's president and superintendent had *inspected* one of these shovels in operation before they bought from respondent the three in question. Further, even if the admission of irrelevant evidence does, in fairness, entitle the opposing party to explain and rebut it in order to dissipate its effect upon the jury, yet it does not require the reception of explanatory and rebutting evidence which is inadmissible for still other reasons, nor of other irrelevant evidence not pertinent to explain or rebut the irrelevant evidence already in. [Jones on Evidence (3 Ed.) sec. 172.] It is to be noted, too, that some of respondent's evidence upon which appellant founds its claim that respondent waived its right to object, is evidence respondent put it merely to explain and rebut testimony appellant

had previously got into the case. This is well illustrated by the testimony of Douse. On this record, under the authorities, this assignment must be overruled.

II. (1) There was no error in excluding the opinion of Douse concerning the question whether the machine was "practical and adaptable to do the work **Opinion.** in the district where the Huttig mine is, and whether it did the work." Douse was a hand shoveler and is not shown to have had any knowledge of machinery, in general, or of the machine in question, in particular, except what he saw of its operation and the operation of one other like it. He told in great detail all he observed about this and one other machine. He was not shown to have had any training, skill or experience with respect to these machines or any others. In addition, the question covered a general territory as to suitability for the work without a showing of similarity of conditions for work or evidence that Douse knew those conditions generally. Further, no showing was made as to what Douse's answer would have been had the court permitted him to answer.

(2). Appellant asked Tallboys the date of sale of the last machine sold in the Joplin district. He answered that he did not remember. Appellant then asked: "You haven't sold one in a year, have you?" On objection, no **Other Sales.** answer was permitted. An exception was saved, but no offer made. It is argued that it was desired to show that no sales had been made since that of the lot of which appellant's three shovels were a part, as the basis of an inference that such failure to sell was the result of the failure of the machines in the carload in question to work satisfactorily. The unsatisfactory work of its three shovels is appellant's defense. The mere fact that no others had been sold in the district, without more, would have no appreciable tendency to prove such unsatisfactory work and, besides, it was not shown what the answer of the witness would be.

(3)   It is argued Tallboy's testimony concerning the decline in the price of ore was a conclusion and not the best evidence. The witness stated the price of ore affected his business of selling mine machinery and that he care-

Price of Ore.

fully watched ore prices in the district and knew what they were at the times concerning which he testified. With regard to his general statement that there was a decline, this was followed by his giving of specific prices which showed the rise and fall of ore prices in great detail. The conclusion that there was a decline was one based on figures given. The question was one of mathematics. As to the question of best and secondary evidence, the witness refreshed his memory from a memorandum but was admonished by the court to answer "if he knew," and he claimed to know and testified on that basis.

III.   Complaint is made of rulings on instructions.

1.   Instruction numbered 10 reads as follows:

"The court instructs the jury that if they believe from the evidence that on or about March 13, 1920, the defendant entered into a written contract with plaintiff for the purchase of three Armstrong shovels, Model 11, at the sum of $3050 each, f. o. b. Duluth, Minnesota, to be shipped to Baxter Springs, Kansas, and that no fraud

Installation: Tests: Reasonable Necessity.

or misrepresentations were practiced or used by Mr. Victor to induce the execution of the contract, and that said shovels were shipped in accordance with the contract

and were in compliance with the contract and reasonably fit and adapted, when properly installed, with the reasonably neccesary accompanying equipment, for loading material from defendant's lead and zinc mine into receptacles to be taken out of the mine, then you will find in favor of the plaintiff and against the defendant for the purchase price of three shovels."

Appellant complains of this instruction that: (1) the words "when properly installed" (a) amount to "a

direction or statement'' that the machine in the Huttig mine was not properly installed, and (b) assumes ''that the machine could be properly installed'' in appellant's mine; (2) the instruction is confusing and misleading; (3) the words ''with the reasonably necessary equipment'' imply that the machine in appellant's mine ''did not have such necessary accompanying equipment;'' (4) it erroneously defines ''what 'reasonably fit and adapted' to appellant's work means;'' (5) it excludes recovery on an implied warranty of suitability; (6) it submits a question of law to the jury.

In support of the first (1) (a) criticism it is argued the evidence conflicted with regard to the character of the installation and that the clause in question ''wipes out the defense'' of breach of an implied warranty of suitability by assuming that ''the whole trouble'' was that the machine ''had not been properly installed'' and ''therefore its failure to work was'' the fault of appellant and not of the machine. The argument in support of criticism (1) (b) is that a machine cannot be properly installed ''to do work it is not adapted to do. The instruction assumes that if you would properly install it, it would do the work.'' The words ''when properly installed'' as used in the instruction do not, in the opinion of the court, assume anything. They are definitive of an essential condition precedent to a good faith test of any machine and clearly convey the sense, ''*if* properly installed.'' A major issue was whether appellant had tried the machine in good faith or whether its apparent tests were conceived and carried out in an effort to construct a defense to an action like this. The instruction left this to the jury and expressly required them to find, before finding for respondent, that the machines were ''reasonably fit and adapted . . . for loading material,'' etc. Neither could appellant test the machines or the jury try the issue of suitability unless the machines tested or considered were properly installed. In no other condition of use could either a test or a trial

of the issue, on that evidence alone, develop the truth. The phrase in question, as it appears in the instruction, assumes nothing. At appellant's instance the jury was specifically instructed upon the issues of installation and fair test. The position (3) that the words "with the reasonably necessary accompanying equipment" imply that such equipment was not provided for the machine tested in appellant's mine is untenable. Under this record the only equipment of the reasonable necessity of which there was evidence was that which the evidence tended to show was essential to the continuous and successful operation of the shovel. The phrase assumes no fact. "Reasonably necessary accompanying equipment" was essential to proper installation, and proper installation was a condition precedent to a fair test. It is argued (4) that the clause "reasonably fit and adapted . . . for loading materials from defendant's mine into receptacles to be taken out of the mine" directs the jury to find the machine was "reasonably fit and adapted" to the work if it would load materials at all, whether or not it worked economically or at a prohibitive cost. The language is general. It would be under-estimating the intelligence of the jury, and the skill of counsel, to hold that this language, "reasonably fit and adapted . . . for loading material from defendant's . . . mine," etc., could have been understood by the jury to mean that a machine which was unreasonably expensive, the circumstances considered, was reasonably fit and adapted to supplant a less expensive system which appellant already had in operation. At any rate, other instructions fully supplied all the particulars which appellant sought to have supplied on this issue and made particular and clear what the words complained of covered in general terms. The instruction (5) did not exclude recovery on an implied warranty. On the contrary, it required a finding of suitability, without regard to respondent's knowledge of the character of the work in appellant's mine. The instruction is not open to the criticisms advanced.

305 Mo.—10.

2.   Instruction numbered 11 reads as follows:

"The court instruct the jury that by implied war-ranty is meant that the shovels were reasonably fit for and adapted to load material from the mine in question into receptacles to be taken out of the mine, and absolute perfection is not implied."

**Implied Warranty: Perfect Machinery.**   With one exception the objections made to this instruction are those made under (4) against a clause in Instruction 10.   These are overruled for the reasons already given.   The objection made to the words "and absolute perfection is not implied" concedes that absolute perfection is *not* implied in a warranty of machinery, but it seems to be suggested that the jury ought not to have been told this lest they use it as an excuse to overlook substantial defects.   There is no warrant in the clause for this apprehension.

3.   Instruction 12 reads:

"The court instructs the jury that if you find for the plaintiff and against the defendant for the purchase price of the three shovels, you may add interest at the rate of six per cent from the date of demand by plaintiff, after it became due, on the purchase price of the shovels."

**Assumption of Disputed Fact.**   It is urged the words "after it became due" contained an assumption that the purchase price was due.   Counsel concede the instruction "is drawn *on the condition* that the jury first find for plaintiff" but, nevertheless, is of opinion the clause was prejudicial.   It was only "if" the jury found for respondent on the main issue that this clause could have begun to operate at all.   Counsel's concession answers his objection.

4.   Instruction 13 is criticised.   It reads:

"The court instructs the jury that the burden of proof upon the defense of fraud or misrepresentation, if any, is upon the defendant to prove by a preponderance of the credible evidence that fraud or misrepresentations were practiced or used by Mr. Victor to **Misrepresentations.**   induce the execution of the contract

offered in evidence, and in this connection the court
further instructs you that misrepresentations constituting
fraud must be statements of fact which Mr. Victor knew
to be false, or had reasonable cause to believe were un-
true. Statements of opinion, if believed to be true by the
person making them, and based upon reasonably reliable
information and belief, do not constitute fraudulent rep-
resentations.''

It is argued the instruction ''leaves out entirely that
class of fraud and fraudulent misrepresentations where
a party makes a statement *not knowing* whether it is true
or false.'' Let it be conceded the evidence authorized the
submission to the jury, as a defense, of a question whether
respondent, through its agent, misrepresented facts with
regard to which neither he nor it had knowledge whether
they were true or false. In this case there was a defense
of implied warranty and one of specific false representa-
tions. The evidence which is relied upon to support the
two is the same. There is no evidence which would sup-
port a finding against the claim of specific misrepresen-
tations which is not pertinent to and included in the issue
respecting the breach of the implied warranty. All the
evidence which tended to prove misrepresentations tended
to prove breach of the implied warranty, and all the evi-
dence which tended to show the machine fell short of the
asserted misrepresentations tended, as well, to show that
it fell short of compliance with the implied warranty.
The evidence will not support a finding of compliance
except upon a finding against the truth of all the evidence
which tended to show that the averred representations
were false. Yet the jury found there had been no breach
of the implied warranty. That issue was submitted to
them, and a finding against the breach was essential to
the verdict. The finding necessarily negatived the truth
of all the evidence upon which the question of misrepre-
sentations made without knowledge would have to be de-
termined on this record. In this situation the omission
complained of was not, even on the concession made, prej-

udicial to appellant. It had the benefit of a submission of the identical facts and a verdict upon them. Had there been a double submission of these facts, a finding against a breach of the implied warranty and one affirming that misrepresentations had been made without knowledge, would have been, on this record, quite contradictory.

Further, the knowledge of Victor of the conditions of appellant's mine was not disputed, and his and respondent's knowledge of the machine could not be denied. There is little room in this case for a theory of representations made in ignorance of the truth without reducing the matter to representations of opinion rather than fact. The objections to that part of the instruction concerning opinions are not tenable. Appellant was not prejudiced by the instruction.

5. Refused instruction "G" had reference to a failure of consideration due to total worthlessness of the machines. Given instructions expressly authorized a verdict for appellant if the jury found the machines to be as predicated in instruction "G."

The case was well and carefully tried by court and counsel. The evidence supports the verdict. The judgment is affirmed. All concur.