### C. JOSEPH JUVLAND v. WOOD BROTHERS THRESHER COMPANY.[1]

April 24, 1942.

No. 33,028.

[1]Reported in 3 N. W. (2d) 772.

*Burton R. Sawyer,* for appellant.
*Guesmer, Carson & MacGregor,* for respondent.

GALLAGHER, CHIEF JUSTICE.

In an action to recover the purchase price of a corn picker, based upon breach of an implied warranty of fitness for the purpose, the jury returned a verdict for defendant. Plaintiff appeals from the order denying his motion for a new trial.

Plaintiff purchased the corn picker from defendant on October 15, 1938, paying the purchase price in full. He testified that before that time he had never operated or even seen at close range a mechanical corn picker, although it appears that he was familiar with farm machinery in general. His testimony is that he relied upon defendant's salesman, Howell, to furnish a corn picker suitable for his needs.

The sale was subject to an express warranty that the machine was durable and made of good material. A provision for notice stated:

"If, after starting the corn picker-husker and using the usual care and skill of competent operators, the purchaser is unable to make the corn picker-husker operate well, he or they shall, within three days from the date of the first use, give written notice to the Wood Brothers Thresher Company at Des Moines, Iowa, by registered mail, stating wherein and in what manner the corn picker-husker fails to fill the warranty * * *," etc.

Plaintiff does not claim that there was a breach of the express warranty, but he contends that there was breach of the implied warranty of fitness for the purpose, in that the machine missed about one-third of the corn, shelled corn, did poor husking, and knocked standing corn down. Defendant claims that when properly operated the machine worked satisfactorily, but that it was not kept on the row by plaintiff and for that reason missed some corn.

1. The assignments of error relate mainly to claimed errors in the charge to the jury. The court instructed the jury that the

law reads into the parties' contract a provision "that the article sold is reasonably adapted to the purpose for which it is sold." Later in the charge the court said: "The question I think you will be required to determine is whether or not this machine functioned as well as such machines of that kind do at the present time, or in 1938, and in the state of development that that machine had at that particular time. If it did not function in that way, then it was not reasonably adapted to the purposes for which it was intended. If it did function as well as other machines and did the same kind of work in as reasonably good a manner as other machines intended for the same purpose, then there was no violation of the warranty." And again the court said: "The question is whether or not this machine operated as such machines do and should as they are constructed, or were constructed at that time, and I think I may repeat that if it did not then the plaintiff is entitled to recover. If it did he is not entitled to recover."

The trial court was of the opinion that the furnishing of a machine which would perform as well as other machines of similar kind was complete compliance of the warranty. In this the court erred. With proper foundation, testimony that the Wood Brothers' corn picker did as good a job as those of its competitors would, we think, be admissible to prove that the corn picker sold plaintiff was fit for the purpose. Waterman-Waterbury Co. v. School Dist. 182 Mich. 498, 148 N. W. 673, L. R. A. 1915B, 626; Ames v. Quimby, 106 U. S. 342, 1 S. Ct. 116, 27 L. ed. 100; but cf. Cretors v. Troyer, 63 N. D. 231, 247 N. W. 558. But, conceding the probative value of such evidence, it is not the criterion of fulfillment of an implied warranty of fitness for the purpose. Although no case has come to our attention in which, in a suit based upon an implied warranty of fitness for the purpose, a comparison with other articles of similar kind has been made the test of compliance, it is evident that there is a very real difference between a warranty, express or implied, that a machine is reasonably fitted to do a particular job, and a warranty that a machine will do a particular job as well as other similar machines. Trapp v. The

New Birdsall Co. 109 Wis. 543, 85 N. W. 478; cf. Zinn v. Hyatt, 60 Mo. App. 627. This difference becomes striking when one considers a case where a certain type of machine is in an experimental or developmental stage or a case where a machine is the only one of its kind being designed specially for a certain job. In Trapp v. The New Birdsall Co. *supra*, the buyer purchased a traction engine ostensibly to run his threshing machine. The warranty sued upon by him in his action for damages against the seller was an express warranty that the machine would do as much and as well as other machines of like size and proportions. The Wisconsin court properly held that it was error to allow considerations to enter the case of whether the machine would operate the buyer's threshing machine (the purpose for which it was bought) or would develop any particular amount of power, because the seller had given no such warranty. The opinion, although dealing with a situation converse to that of the instant case, illustrates the gap that may often exist between the standard performance of a certain type of machine and that machine's suitability for a particular purpose. *Cf.* Zinn v. Hyatt, *supra*.

Mason St. 1927, § 8390 (1), provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The meaning of this statute is plain. The article purchased does not have to be perfect or the best of its kind, Tennessee River Compress Co. v. Leeds, 97 Tenn. 574, 37 S. W. 389; Lake Superior Loader Co. v. Huttig L. & Z. Co. 305 Mo. 130, 264 S. W. 396; but it must be reasonably suited or fitted to the purpose for which it is sold. See Bekkevold v. Potts, 173 Minn. 87, 216 N. W. 790, 59 A. L. R. 1164; Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 234 N. W. 685; E. Edelman & Co. v. Queen Stove Works, Inc.

205 Minn. 7, 284 N. W. 838. There is no reason for employing any other test.

2. The trial court charged the jury that the provision for three-day notice in the contract of sale applied to the implied warranty of fitness for the purpose, a construction which under McCormick Harvesting Mach. Co. v. Fields, 90 Minn. 161, 95 N. W. 886, appears to be proper. The court also charged properly that defendant could waive the stipulated three-day notice. 2 Mechem, Sales, § 1385; Detwiler v. Downes, 119 Minn. 44, 137 N. W. 422, 50 L.R.A.(N.S.) 753; Nichols & Shepard Co. v. Wiedemann, 72 Minn. 344, 75 N. W. 208, 76 N. W. 41; Massachusetts L. & T. Co. v. Welch, 47 Minn. 183, 49 N. W. 740. But the court went on to say:

"There is some difference in this particular case because the claim of the defendant is that this machine was not defective and that no defects were pointed out, and that its men who examined it and who undertook to operate it and show how it should be operated found no defects in it. Now, if that is true, if there were no defects in this machine, then the company did not waive its notice. If there were defects in the machine and those defects were known to the men who were there, then the notice would be waived, because, while the company would have notice of the defects through its men, but if there were no defects, why, of course, it had no such notice and would be entitled to know the position claimed by the plaintiff and what he claimed were the defects."

It is fairly clear that the court intended to require, as an element of waiver, actual notice to the defendant of the particulars in which plaintiff claimed the implied warranty had not been complied with. So construed, it is still subject to the objection that it unduly restricts the scope of the implied warranty of fitness for the purpose, because plaintiff did not have to point out any specific defects in the machine. It was enough for him to show its unsuitability for the purpose for which it was bought. Parker v. S. G. Shaghalian & Co. Inc. 244 Mass. 19, 138 N. E. 236.

Reversed.

HOLT, JUSTICE (dissenting).

I am unable to concur in a reversal. The court specifically charged that there was an implied warranty. Beginning in folio 714, the court said:

"That warranty [implied warranty] did not appear written in the contract. It was not there in so many words, but it was just as effective as if it had been written there, and that is the law. The law implies that there shall be read into every such contract that the article sold is reasonably adapted to the purpose for which it is sold, and that was in that contract just as much as if it was written there in black and white, and, being in the contract, the defendant, if it chose to do so, had a right to provide that before any claim would be made for a violation of that contract that the law implied, they [it] would have a right to remedy the difficulty, and apparently that was the provision that was in this contract, that it would have the opportunity to remedy, if it could, before the sale would be forfeited and the money recovered by the plaintiff."

Before the quoted portion of the charge was given, the court had very fully stated the claims of both plaintiff and defendant as to how the machine operated, and, after giving the above quoted part of the charge, the court stated that the stipulated notice of defect could be waived, and left to the jury whether it was waived by defendant's undertaking to remedy the defect in the machine, if any, stating:

"If there were defects in the machine and those defects were known to the men who were there, then the notice would be waived, because, while the company would have notice of the defects through its men, but if there were no defects, why, of course, it had no such notice and would be entitled to know the position claimed by the plaintiff and what he claimed were the defects."

This was evidently directed to the fact that the telegram did not specify any defect. In my opinion, the charge fully protected the rights of plaintiff, and the order should be affirmed.

Stone, Justice (dissenting).

I concur in the opinion of Mr. Justice Holt.